THOMAS D. DEWEY AND JOHN STEWART v. THE TOLEDO, ANN ARBOR & NORTH MICHIGAN RAIL-WAY COMPANY.

*Pleading—Execution of note—Railroad companies—Ultra vires—Estoppel.*

1. The failure of a railroad company to deny the execution of a note purporting to have been signed by the company by its auditor, as provided in Circuit Court Rule No. 79, is an admission that the note was so signed, but whether the authority of

the auditor to execute the note is also admitted, *quaere*, the jury having found that he had such authority.

2. Where a railroad company enters into a contract with the owner of the controlling stock of another railroad company for the purchase of his stock, for the purpose of acquiring the road-bed, right of way, and franchises of the other company, and executes its note in payment therefor, it cannot, after the full execution of the contract by the stockholder and its utilization of the property purchased, deny, in a suit upon the note, its power to enter into the contract and execute the note; citing *Bank v. Elevator Co.*, 90 Mich. 550.

3. A consolidated railroad company takes, by consolidation under the statute, subject to the liabilities of the original companies.

Error to Shiawassee. (Newton, J.) Argued March 11, 1892. Decided April 8, 1892.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*T. W. Whitney,* for appellant.

*Hanchett, Stark & Hanchett,* for plaintiffs.

LONG, J. This action was brought to recover upon a promissory note given July 3, 1882, and made payable to the order of James M. Ashley, president of the Toledo, Ann Arbor & Grand Trunk Railway Company. It was given for the sum of $9,120, and was signed by the Toledo, Ann Arbor & Grand Trunk Railway Company, by B. F. Jarvis, auditor. It was indorsed by J. M. Ashley, president, and J. M. Ashley, payable to the order of T. D. Dewey, and by Dewey indorsed to the plaintiffs in this suit. Several payments were indorsed upon the note in 1883 and 1884. The amount remaining due and unpaid at the time of the trial was conceded to be $4,966.76, and for which amount the plaintiffs had verdict and judgment in the court below. Defendant brings the case here by writ of error.

The plaintiffs, to make their case, in the first instance

proved the execution of the note by the defendant, and its indorsement to Dewey or order by the payee, by a stipulation in the case made by the attorneys of the parties, and the indorsement of Dewey to the plaintiffs. The stipulation is as follows:

"In this cause it is stipulated that the same be continued over the December term of 1890 without costs, and on the part of the defendant the execution of the note declared upon, a copy of which is given in the declaration, by the Toledo, Ann Arbor & Grand Trunk Railway Company, as maker, and its indorsement by the payee, are admitted, so that plaintiffs need not be put to proof of such execution and indorsement, other than by producing the note in evidence; but no defense to the note is waived."

The plea of the defendant is the general issue, and no affidavit was filed denying the execution of the note.

The position of the defendant on the trial was:

1. That the agreements, which are in writing, and which must be construed by the court, show that the transfer of stock for which the note was given was made to James M. Ashley, and the debt represented by such note was his debt; and the note, if the note of the company, was to secure the debt of James M. Ashley, and thereby became accommodation paper, and the act was *ultra vires* and void.

2. That it was necessary to prove the authority and power of the auditor to sign the note before the same was admissible in evidence, as the auditor had no such authority and power unless authorized by a resolution of the board of directors, and that the stipulation did not waive the necessity of making the proof.

3. That even if the sale and transfer of the stock of the Owosso & Northwestern Railroad Company, for the payment of which the note was given, was to the Toledo, Ann Arbor & Grand Trunk Railway Company, and for its benefit, its purchase was an act the railway company had no authority and power to do, and was *ultra vires*, and the note given therefor was void.

It appears that the note was given in payment of a

portion of the capital stock of the Owosso & North-western · Railroad Company, which was a company organized to build a railroad from Owosso northwest to Frankfort, this State. The Toledo, Ann Arbor & Grand Trunk Railway Company was organized to build a railroad from Ann Arbor to Pontiac. The Toledo, Ann Arbor & North Michigan Railway Company was organized after the note in suit was given, to wit, October 28, 1882, to build a road from Owosso to St. Louis. On May 19, 1884, the last two named railroad companies were consolidated, in pursuance of the statute, under the name of the latter company. About the time the note was given some other papers were executed between the parties, which relate to the note, and which were offered by defendant's counsel, and were admitted in evidence by the trial court, as relating to the question of the consideration for which the note was given.

These papers were:

1. A proposition on the part of Mr. Dewey to sell to J. M. Ashley, his agents or assigns all the stock held by Dewey in the Owosso & Northwestern Railroad Company, which was two-thirds or more of all the stock, with a guarantee that the road was free from debt, for the sum of $12,180, to be paid, one-fourth in 90 days, and the balance in one year, to be secured by the note of the Toledo, Ann Arbor & Grand Trunk Railway Company, indorsed by Ashley, with interest at 6 per cent., the note to be secured by a transfer of a certain quantity of iron rails, to be delivered at Owosso. The condition was also expressed that Ashley was to build the road from Owosso to Alma in two years if $65,000 of aid was raised on the line between those points. This paper was dated April 4, 1882.

2. An acceptance of that proposition, signed by J. M. Ashley, Jr., and J. M. Ashley by J. M. Ashley, Jr., his attorney. In this acceptance it is recited that the offer of Dewey has been accepted by J. M. Ashley, and in pursuance of which Ashley has paid to Dewey the sum

of $3,060, and that he therein agrees for the railroad company of which he is president, to wit, the Toledo, Ann Arbor & Grand Trunk Railway Company, the owner of the iron rails, to secure the balance; "which arrangements, payments, and agreements have been made by J. M. Ashley, Jr., who in said business represents himself to be the attorney of said company, and authorized by said company and its president to make this contract, and to sign his name thereto; and it is further agreed that on failure to comply with the terms of said offer and proposition the stock which has this day been assigned by said Dewey to James M. Ashley, Jr., as trustee, shall be reassigned to said Dewey: *Provided,* that the failure to build the road in the time mentioned shall not work any forfeiture of the contract, if the work is being in good faith carried on."

J. M. Ashley, Jr., on July 7, 1882, made another paper on behalf of the railroad company, and signed it in the name of the company as attorney for it, to the effect that a chattel mortgage should be given upon these iron rails to secure the note. On August 16 following the chattel mortgage was given, signed by J. M. Ashley, in which the indebtedness of the Toledo, Ann Arbor & Grand Trunk Railway Company upon the note was recited.

It was then shown upon the part of the plaintiffs that certain of the payments made and indorsed on the note were make through the First National Bank of Owosso by J. M. Ashley, Jr., by Owosso city bonds issued to the Toledo, Ann Arbor & Grand Trunk Railway Company, and that certain payments were made upon the note from the funds of the Toledo, Ann Arbor & North Michigan Railway Company, and paid by its checks.

At the close of the testimony the defendant, by its counsel, requested the court to charge the jury:

"1. That the note sued upon was given in pursuance of the agreement of April 4, 1882, by which Thomas D. Dewey agreed to transfer certain shares in the Owosso

& Northwestern Railroad Company to James M. Ashley, as shown by the undisputed testimony.

"2. That the note so given was for the purpose of enabling James M. Ashley to purchase said stock.

"3. That a railway company has no right to give a note obligating itself to pay for property acquired by another.

"4. That this defendant is not liable, as between itself and Thomas D. Dewey, on its note, as above described.

"5. That notice of the character of this note herein sued upon, if possessed by Dewey, must also be attributed to the plaintiffs, Dewey & Stewart, partners.

"6. That, under the evidence in this case, plaintiffs cannot recover."

The plaintiffs claimed upon the trial, and that claim is made here:

1. That the note sued upon is the note of the Toledo, Ann Arbor & Grand Trunk Railway Company, and not the note of Ashley, and that the railway company is the maker and principal obligor, and not merely an accommodation maker.

2. That the note was given for stock which the railway company actually had, and that the said railway actually used a portion of the old road-bed of the Owosso & Northwestern Railroad Company in the building of its road from Owosso to the northwest, and had all the benefits which the majority of the stock gave in that company.

3. That the giving of the note upon the purchase of such stock, and acquiring the rights of such road, was an act which the company could do, as it was not a parallel or competing line, under the provisions of section 3403, How. Stat., and that by virtue of the provisions of such statute the defendant, as successor of the Toledo, Ann Arbor & Grand Trunk Railway Company, became liable for the debt.

4. That the defendant, not having filed an affidavit denying the execution of the note, by the stipulation admitted its due execution, and admitted the indorsement of Mr. Ashley.

The court directed the jury, in his general charge, in substance:

1. That the stipulation admitted the signature of Mr. Jarvis and of the road, but did not admit the liability of the company.

2. That it was a question for the jury to determine whether the sale of this stock was made to the Toledo, Ann Arbor & Grand Trunk Railway Company or to Mr. Ashley, or to Mr. Ashley as trustee in trust for the railway company; that if made to the company, or to Mr. Ashley in trust for it, and the railway company had the use and benefit of it, together with the franchise and the property represented by the stock, the contract would not be *ultra vires;* that the railway company had the right, for the purpose of building its road, to obtain the right of way, and to make the purchase for that purpose.

3. The court refused to give defendant's first request to charge, and modified the second request by adding, "but whether for his own use, or for the corporation of which he was president, you are to determine." The court also modified the third request by saying: "That is true, gentlemen, unless you find that the purchase was made for its use, and the company got the use of it, with full knowledge of its officers of the method of its acquisition, and the purpose for which it was acquired." The fourth and sixth requests were refused, and the court modified the fifth by adding, "that is, if you find that the note was only accommodation paper." The court also instructed the jury as requested, "that there is a difference between an act unauthorized, and one beyond the power or capacity of the party to authorize or make."

4. The court thereupon directed the jury: "If it is true that a corporation cannot make a note for anything connected with its business, we ought to have some direct adjudication on it. It acts by its officers, and the responsibilities are different. Some are weighty, and some are trifling, dependent entirely upon the duty which the officer has to perform. But it would seem strange if a railroad company had a smash-up of their cars, and they could not, by their president or attorney or agent, look after their business, and purchase cars and put them upon the road, so as to continue the public travel uninterruptedly. So if the rails break out, or the ties were washed out, it would be a strange doctrine that the board of directors would all have to be called and pass resolutions, and the cars stand still until the board of directors should say, as Joshua did to the sun, that it

might move on. I don't understand that to be the rule. I understand there are certain powers that may be exercised from the time they conceive the idea of procuring the right of way, such as may be necessary to successfully construct, maintain, and operate their road; and the power, although not expressly granted, in a case of accident, to buy iron or ties or rails; the power to maintain, power to construct, and power to operate the road." Speaking of the stipulation, the court stated to the jury that by its terms the making of the note by the railroad company and its indorsement by Mr. Ashley were admitted, so that the plaintiffs need not be put to the proof of execution and indorsement, other than by producing the note, but no defense to the note was waived.

The assignments of error are:

1. That the court erred in overruling the objection to the introduction of the note in evidence, because the note shows upon its face that it was executed by B. F. Jarvis, auditor; and the power and authority of the auditor are denied, unless authorized by resolution of the board of directors.

2. That the court erred in admitting the testimony of Mr. Dewey that J. M. Ashley, Jr., represented that he was making the purchase for the Toledo, Ann Arbor & Grand Trunk Railway Company.

3. That the court erred in admitting testimony tending to show that the payments upon the note were made by the defendant company, and that the Toledo, Ann Arbor & Grand Trunk Railway Company used the old road-bed of the Owosso & Northwestern Railroad Company.

The other assignments of error relate to the refusal of the court to give the defendant's requests to charge, and the modifications of those given, as well as to the charge as given by the court.

We have carefully examined the whole case, and find no error in the record.

The court was not in error in admitting the note in evidence, under the proofs made. No affidavit was filed, denying its execution; and, under Circuit Court Rule

No. 79, the plaintiffs were not put to proof of its execution. The failure to file this affidavit under the plea of the general issue was an admission that the Toledo, Ann Arbor & Grand Trunk Railway Company, as well as B. F. Jarvis, signed the note. The rule provides that—

"Upon the plea of the general issue in an action upon any written instrument, under seal or without seal, the plaintiff shall not be put to the proof of the execution of the instrument or the handwriting of the defendant unless the defendant, or some one in his behalf, shall file and serve a copy of an affidavit denying the same."

It is contended by plaintiffs' counsel that the effect of this rule is not only to admit the execution of the instrument sued upon, but also to admit that the officer of the company, signing the note, was authorized by the company to sign it, so as to make his act the act of the company itself; that the rule does not apply alone to the hand-writing of the defendant, but that it goes further, and makes the admission cover the execution of the instrument,—and counsel cite in support of this proposition the following cases: *Pegg v. Bidleman*, 5 Mich. 26; *Hoard v. Little*, 7 Id. 468; *Lobdell v. Bank*, 33 Id. 408; *Curran v. Rogers*, 35 Id. 221; *Jacobson v. Miller*, 41 Id. 90; *Chicago & N. E. R. R. Co. v. Edson*, Id. 673.

We need not stop to consider the question raised as to whether the failure to file the affidavit under this rule amounts to an admission that the signing of the note was authorized by the company, so that the act of Mr. Jarvis, in signing it, was the act of the company, as that question was submitted to the jury under the charge of the court, and the fact found in favor of the plaintiffs. It was also found as a fact by the jury that the company was not merely an accommodation maker for Ashley; but under proper instruction from the court, and upon a fair submission of the question, the jury found that it

was the note of the company, duly executed by it, by its officer empowered to do so. There was some evidence to go to the jury on that question. The fact that the contracts were made in behalf of the company, and in its name, and that the company took and used the property acquired by the giving of the note, has a tendency to show that it was the note of the company; and the court expressly stated to the jury that they should consider the question whether the purchase was made for the use of the company, and whether the company got the use of the property, with full knowledge of its officers of the method of its acquisition, and the purposes for which it was acquired.

The court was not in error in stating to the jury that the company had the right, for the purpose of building its road, to obtain the right of way and to make the purchase.

How. Stat. § 3403, provides:

"It shall be lawful for any railroad company in this State, which shall have entered in good faith upon the work of constructing its road, and shall have become unable to complete the construction of the same, or of any part thereof, to sell and convey the whole or any part of its road so partially completed, together with the rights and franchises connected therewith, to any other railroad company or corporation of this State, not having the same terminal points, and not being a competing line: *Provided*, that, at any general or special meeting duly called for that purpose, the stockholders carrying [owning] two-thirds of the stock of said company shall consent thereto: *And provided, further*, that the company or corporation so purchasing shall hold such property and franchise subject to all the obligations and duties, and with all the rights and privileges, prescribed by the general railroad law of this State."

The Owosso & Northwestern Railroad Company was organized to build a railroad from Owosso northwest to Frankfort. The Toledo, Ann Arbor & Grand Trunk

Railway Company was organized to build from Ann Arbor to Pontiac. The roads, it will be seen, did not have the same terminal points, and the sale was made by one owning over two-thirds of the capital stock. No part of the Owosso & Northwestern Railroad had at that time been completed, but work had been entered upon, and a portion of the grading done. We think the sale of the stock of this road to the Toledo, Ann Arbor & Grand Trunk Railway Company was authorized by this statute, and did not come within the inhibition of article 19a, section 2, of the Constitution. It was not a parallel line, and was not done for the purpose of consolidation.

But even if the Toledo, Ann Arbor & Grand Trunk Railway Company had no power, under the statute, to enter into this contract of purchase, and give the note in controversy for that purpose, yet the purchase and the giving of the note, and the transactions connected therewith, could not now be questioned by the company; and under the statute, the defendant company stands in no better position, as it could only take, by consolidation under the statute, subject to the liabilities of the other company. It appears from the findings of the jury, upon a fair submission of that question, that the Toledo, Ann Arbor & Grand Trunk Railway Company made the purchase of the stock of the Owosso & Northwestern Railroad Company for the purpose of a right of way, and appropriated the property so purchased. The note in question was given to Mr. Dewey in pursuance of the contract made with him for the transfer of his stock; and he, on his part, has fulfilled the contract by transferring the stock to James M. Ashley, Jr., as trustee. The contract is completely executed on his part, and the only thing remaining is the payment of

the money in fulfillment of the contract on the part of the company. Under these circumstances the defense that the giving of the note is *ultra vires* will not be permitted. 2 Mor. Priv. Corp. §§ 650, 653, 658, 684, 689, 692, 693, 696, 698, 700, 703; *Arms Co. v. Barlow,* 63 N. Y. 62; *Arnot v. Railway Co.,* 67 Id. 315; *Board v. Railway Co.,* 47 Ind. 407; *Railroad Co. v. Transportation Co.,* 83 Penn. St. 160; *Wright v. Line Co.,* 101 Id. 207; *Water Co. v. Fluming Co.,* 22 Cal. 621; *Raft Co. v. Roach,* 97 N. Y. 378; *Day v. Buggy Co.,* 57 Mich. 151; *Bradley v. Ballard,* 55 Ill. 419; *Brewing Co. v. Flannery* (Ill.), 27 N. E. Rep. 287; *Bushnell v. Bank,* 10 Hun, 378; *Railroad Co. v. Railroad Co.* (N. H.), 20 Atl. Rep. 383; *Carson City Sav. Bank v. Elevator Co.,* 90 Mich. 550, and cases there cited.

The rule recognized by these cases is summed up by Morawetz on Corporations (sections 650, 653, 658) as follows:

"It does not follow that, because the exercise of corporate powers is prohibited by the common law, any corporate acts performed in violation of this prohibition will not be recognized by the law as corporate acts. * * * Inasmuch as the prohibition of the common law against the unauthorized exercise of corporate power is based upon grounds of public policy alone, it seems but reasonable that the effect of this prohibition upon the legal validity of corporate acts should be determined by the requirements of public policy; * * * and, after a contract made by a corporation in excess of its chartered powers has been wholly performed by either party, * * * it cannot be said to be in the interest of public policy to deny the innocent party relief. * * * General statutory prohibitions against any corporate act not included in the powers conferred by the charter are merely declaratory of the general common-law prohibition against any exercise of corporate powers which has not been authorized by the legislature; and there is no reason for supposing that the legislature, in enacting such a prohibi-

tion, intends to give it any greater force or effect than the common-law rule."

In *Arms Co. v. Barlow*, 63 N. Y. 69, it was said:

"The plea of *ultra vires* should not, as a general rule, prevail, whether it is interposed for or against a corporation, when it would not advance justice, but on the contrary would accomplish a legal wrong."

The last proposition was quoted with approval in *Carson City Sav. Bank v. Elevator Co.*, 90 Mich. 550.

The doctrine applies with great force in the present case. The Toledo, Ann Arbor & Grand Trunk Railway Company has acquired all the property and franchises sold by Mr. Dewey. It has put the roadbed to use. It has appropriated all that was acquired for which the note was given. The defendant company succeeded to all its rights, privileges, and franchises; and, under the statute by which it was authorized to consolidate, it is subjected to all its liabilities. It has reaped the benefit of all that Dewey sold, and now attempts to interpose the plea that it was beyond the power of the Toledo, Ann Arbor & Grand Trunk Railway Company to make the contract to acquire the property of which it, as a railroad company, is in the use and enjoyment. The court below was correct in its ruling, and might very properly have instructed the jury, upon this branch of the case, that the defendant company was estopped, under the circumstances, from pleading this want of power.

As this must dispose of many questions raised upon the requests to charge, and the modifications of those given, as well as to the general charge of the court, we need not discuss them. The court below laid before the jury, for their determination, all of the questions of fact involved, in a very clear manner, and fairly and carefully guarded every right to which the defendant company was entitled.

We find no error in the record, and the judgment must be affirmed, with costs.

The other Justices concurred.