THE CARSON CITY SAVINGS BANK V. THE CARSON
CITY ELEVATOR COMPANY.

*Corporations—Ultra vires—Estoppel.*

1. The plea of *ultra vires* should not, as a general rule, prevail,
   whether interposed for or against a corporation, when it would
   not advance justice, but, on the contrary, would accomplish a
   wrong; citing *Day v. Buggy Co.*, 57 Mich. 151; *Steel Works v.
   Bresnahan*, 60 Id. 337.

2. Where the stockholders of a corporation sign its articles of
   association, knowing that the object of the organization is to
   engage in a certain kind of business specified therein, and in
   which it does engage, and thereby incurs liabilities, the cor-
   poration will not be permitted, in a suit to enforce such liabil-
   ities, to plead a want of authority under the law to engage in
   said business.

Error to Montcalm. (Smith, J.) Argued March 4,
1892. Decided March 11, 1892.

*Assumpsit.* Defendant brings error. Affirmed. The
facts are stated in the opinion.

*Ellsworth & Rarden* and *John Lewis (George H. Cagwin,*
of counsel), for appellant, contended:

1. There is no finding by the court that the notes in suit were
   given by defendant's officers or manager for any indebtedness
   arising from the building of said elevator, or the purchase of
   land upon which it was built, or the business of storing grain
   or other commodities, the only legitimate business of the
   defendant; and therefore the findings do not support the judg-
   ment; citing Mor. Priv. Corp. §§ 34, 35, 51, 55, 149, 354; *Wood
   v. LaRue*, 9 Mich. 158; *Rowe v. Wright*, 12 Id. 289; *Burk v.
   Webb*, 32 Id. 173; *Burdick v. Chamberlain*, 38 Id. 610.

2. The Court will not, on error, look into the evidence to see if
   it is sufficient to support the findings of fact; citing *Thatcher
   v. Church*, 37 Mich. 264.

*McGarry & McKnight,* for plaintiff, contended for the
doctrine of the opinion.

MORSE, C. J.   The plaintiff is a corporation duly organized under the laws of this State February 1, 1887. The defendant is a corporation organized May 2, 1887, under Act No. 26, Laws of 1867, entitled—

" An act to provide for the incorporation of associations for the purpose of constructing, owning, and controlling warehouses for the storage of grain and other commodities."

Every stockholder in the plaintiff company at the time of its organization was also a stockholder in the defendant company at the time of the latter's organization. There were but two of the stockholders of the defendant company not stockholders of the plaintiff corporation, 'to wit, C. J. Rumsey and Patrick M. Fox.

Article 2 of the articles of the association of the defendant shows the object of the corporation, to wit:

" The purpose or purposes of the corporation are as follows:   For the purpose of constructing, owning, and controlling warehouses for the purpose of buying, selling, handling, and storing all kinds of grains, fruits, vegetables, wool, lime, coal, salt, and other commodities."

Plaintiff sued upon certain promissory notes signed by the defendant company as follows: " Carson City Elevator Co., M. J. Miner, Mgr."   The defense to these notes seems to have been that Miner had no authority to make them, and that the findings of the court fail to show .that they were given for any legitimate business of the corporation; that such findings do not show that said notes, or any of them, were given for the building or operating of a warehouse or elevator, or that they were not issued in the illegitimate business of buying and selling grain.

The circuit judge finds, among other things, that on the day the company was organized—

" Directors were duly chosen and officers duly elected, and on

the same day the following proceedings were had and taken by the board of directors of said company:

" 'At a meeting of the directors of the Carson City Elevator Company, held May 2, 1887, at the Savings Bank in Carson City, the following-named persons were elected as its officers: S. W. Webber, president; E. Middleton, vice-president; Chas. H. Morse, secretary; and L. L. Trask, treasurer and general manager. Upon motion of Chas. H. Morse the following resolutions were adopted: "Resolved, that L. L. Trask is hereby appointed manager of the Carson City Elevator Company, with authority to complete the elevator building of said company, to buy and sell grain and other produce and property pertaining to the business of said company, to borrow money for the use of said company, and pay out the same in the business of the company, subject to the control and approval of the board of directors of said Carson City Elevator Co." Meeting adjourned. L. L. TRASK, Clerk.'

" The defendant, after its organization, proceeded to erect an elevator, and carry on the business of buying and storing and selling grain, borrowing money from the plaintiff with which to build its elevator, and conduct its business operations. No capital stock was paid in at the time of the organization of the defendant, and only eighteen hundred dollars of its capital stock has ever been paid in. A few only of its stockholders paid their subscriptions.

" In order to carry on its operations, the defendant was accustomed to and did borrow money from the plaintiff by giving its notes to the plaintiff, signed by it, per L. L. Trask, manager. The business was not profitable, and a large indebtedness was created with the plaintiff.

" May 7, 1888, the defendant elected the following directors as its officers: C. W. Middleton, president; M. J. Miner, vice-president; C. J. Rumsey, secretary and treasurer. At the same meeting the following action was taken:

'Moved by F. W. Kelley, and supported by E. W. Middleton, that M. J. Miner be hired as long as he gives satisfaction, at a salary of eight hundred dollars per year. Carried.'

" Immediately upon this appointment of Mr. Miner, he at once assumed the duties previously performed by L. L. Trask, the general manager, and the latter at once ceased to exercise any duties in behalf of the defendant. The indebtedness existing with the plaintiff, which had been previously contracted by the defendant, and was

represented by promisory notes signed by the defendant, per L. L. Trask, general manager, falling due in the course of time, were renewed by other notes given by the defendant by the said Miner, who signed the same with the name of the defendant, per M. J. Miner, manager. The notes in suit were negotiated by the secretary and treasurer of the company, and they all form a portion of a series of renewals of the original indebtedness. The officers of the company knew of the existence of the indebtedness from defendant to the plaintiff, and knew the manner in which said indebtedness was renewed from time to time. They also knew the manner in which the business of the defendant was being conducted. No objection was ever raised by the defendant or any of its officers to the authority of Mr. Miner to bind it or give notes signed by him as manager, until this suit was brought. The president of the defendant, Mr. Middleton, who resided at Greenville, Michigan, was aware of the manner in which Mr. Miner was performing the duties for the defendant, and frequently honored drafts drawn on himself by said Miner in the purchase of grain and in the payment of the same, in the manner in which Mr. Miner was signing the commercial paper of the defendant. The defendant also borrowed money at Greenville and Ionia banks by giving its notes, signed by Mr. Miner as manager. These notes were paid. The defendant permitted Mr. Miner to appear as possessing competent authority to give the notes in suit in the manner in which they were executed. It was distinctly conceded and admitted on the trial that the defendant was a corporation. No question was made on the trial as to its existence and due incorporation.

"There was no testimony introduced tending to prove any fraud on the part of Mr. Miner in the giving of the notes, and the money loaned by the plaintiff to the defendant was used in the business of the defendant.

"I therefore conclude as a matter of law that, whether Miner had authority or not to execute the notes in suit, the defendant is estopped from questioning his authority, and that the plaintiff is entitled to judgment in the sum of nine thousand and twenty-four and 67-100 dollars."

The court was correct in its conclusion of law. Whether the company was authorized to buy and sell grain under its charter and by virtue of the act under

which it was incorporated is immaterial. Its articles of association distinctly set out its purpose to be to engage in the buying and selling of grain and other commodities. It may be that it could not organize under the act of 1867 for as broad a purpose as this, and that its legal franchise, if tested, would be confined to the constructing, owning, and controlling of warehouses and elevators for storage, but that is a matter to be determined by the interposition of the public through the Attorney General. Every one of these stockholders signed the articles of association, and knew that the object of this company was to engage in the buying and selling of grain and other commodities, as well as the storage of the same. Knowing this, and having voluntarily engaged in the business, and borrowed this money, and used it as well in the building of the elevator as in its other business, the defendant will not be permitted to plead that it had no authority under the law to do exactly what its articles of association stated to all the world was its object and purpose to do under and by virtue of its incorporation.

"The plea of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but on the contrary would accomplish a legal wrong." *Arms Co. v. Barlow*, 63 N. Y. 62, 69; 2 Mor. Priv. Corp. § 693, p. 661; *Day v. Buggy Co.*, 57 Mich. 151; *Steel Works v. Bresnahan*, 60 Id. 337. See also cases analogous to the present: *Lodge v. Smith*, 58 Miss. 301; *Navigation Co. v. Weed*, 17 Barb. 378; *Bradley v. Ballard*, 55 Ill. 413; *Mining Co. v. Bank*, 96 U. S. 640; *McCarthy v. Lavasche*, 89 Ill. 270.

The judgment is affirmed, with costs.

The other Justices concurred.