131    135
s91NW 132
e132  ᵃ  5
,131   135.
143    158
131    135
145   ²642

REHBERG *v.* TONTINE SURETY CO.

1. Corporations—Transfer of Assets—Liability on Existing Contracts.

A transfer of all the business and assets of one corporation to another, in consideration, among other things, that the latter assume the former's contracts, renders the purchasing corporation liable on such contracts.

2. Same—Ultra Vires—Estoppel.

A corporation receiving money under a contract entered into by it is estopped to assert that it is *ultra vires*.

3. Gambling Contracts—Validity.

A contract requiring one party to pay $80 in weekly installments of $1.25 each, the contract to be forfeited for any default in such payment, and requiring the other party, three months after the last payment, to deliver a diamond to the first party, and to buy the same back from him at $120, if he so desires, is not, on its face, a gambling contract.

Error to Wayne; Rohnert, J. Submitted November 15, 1901. (Docket No. 121.) Decided June 24, 1902.

*Assumpsit* by Ernest Rehberg against the Tontine Surety Company of New Jersey on certain tontine diamond contracts. From a judgment for plaintiff, defendant brings error. Affirmed.

Plaintiff sued defendant upon four contracts,—two made with the plaintiff direct, and two with other parties, and assigned to plaintiff. The contracts had been fully performed by him and his assignors, and were due when suit was brought. The contracts were made with the Tontine Surety Company of Detroit, a Michigan corporation, organized and existing under the laws of this State. Each contract provided that, upon payment of $80 in 63 consecutive weekly payments of $1.25 each, the defendant would sell and deliver to him a commercial white, clear, and perfect diamond, of the weight of 1½ carats, within three months after the sixty-third payment. The contract further provided that, in case the holder should not desire the diamond after the same was delivered to him, the company would buy it back at the time of delivery for $120 in cash. It further provided that, if any holder of such contract should fail to pay his weekly installments as provided, and continue in default more than a week, the contract was to become null and void, and all payments made thereon forfeited.

The declaration sets out these contracts; their fulfillment by plaintiff and his assignors; that defendant, a New Jersey corporation, assumed all the obligations of the former company, including the obligation to perform its contracts; that it notified plaintiff that it had assumed such obligations; and that the defendant had refused and neglected so to deliver said diamonds, or to pay the value thereof. The plea was the general issue. The court instructed the jury that the defendant had failed to perform its contract, and was liable for damages, and that the

amount of damages was $120 upon each contract. The only question left to the jury was whether the defendant assumed the payment of these contracts upon which suit was brought. The jury were instructed that if they found that there was an understanding between the former company and the defendant, and on the part of the holders of the contracts, that the defendant should accept the liability on those contracts, and pay them, and that the former company was released by the holders of the certificates, and the liability of the latter company accepted, it was liable. The jury were further instructed that if they found that a part of the consideration for the purchase by the defendant was the assumption of the liabilities of the former company, and for that it received all the assets of the old company, the defendant was liable; but, if they should find that there was no such mutual agreement or assumption on the part of the defendant, they should find no cause of action.

Counsel for defendant requested the court to instruct the jury that there was no evidence to authorize them in finding a verdict on the assigned contracts. The court thereupon instructed the jury as follows:

"If you find that the new company took all of the assets of the old company, and as a part of the consideration for those assets agreed to pay all the liabilities of the old company, it covers those two contracts also. If you find that there was simply a dissolution of the business of the old company and an absorption of it by the new company,—and you must consider the fact that the officers of the old company and the new are the same persons,—if you find that there was simply an incorporation of the new company and the old company, the new company taking possession of the business of the old company, so as to substantially absorb it, even if there was no sale, then the new company will be liable upon all the contracts."

Verdict and judgment went for the plaintiff.

*John J. Speed*, for appellant.

*Graves & Hatch*, for appellee.

GRANT, J. (*after stating the facts*). 1. We do not deem it essential to enter into a detailed statement of the testimony in regard to the negotiations between these two corporations which culminated in the latter's becoming possessed of all the business and assets of the former. It is sufficient to say that there was evidence to sustain the charge of the court, and to show that defendant had swallowed up all the business and assets of the former company, had notified the holders of contracts in the former company that it (the latter) had assumed them and would pay them, and that one consideration for such transfer was the assumption by the defendant of the contracts made with the former company, and that plaintiff and other contract holders in the former company acted in accordance therewith. The instruction was in direct accord with the former holdings of this court. *Shadford* v. *Detroit, etc., Railway*, 130 Mich. 300 (89 N. W. 960), and authorities there cited. Counsel for the defendant characterizes the transaction as one solely of purchase, in which the purchaser is not liable for the debts of the vendor. As shown in the above cases, that principle does not apply to cases of this character.

2. The defendant is not in position to assert that these contracts are *ultra vires*. There is nothing to indicate that they were not entered into in good faith. The defendant has received the plaintiff's money. The law estops it to now assert, "You cannot have what I promised to give, because I had no authority to make the contract."

3. It is next asserted that this is a gambling contract, and void, as against public policy. We cannot so hold. The contract provides for the payment of $80 in cash, and the agreement to deliver, in consideration therefor, a diamond, which the party (the vendee) may keep or sell back, as he chooses. It was contemplated that many forfeitures would occur from failure to make weekly payments, and that the corporation would make large gains from this source. They are not gambling contracts upon their face, nor does the testimony taken in this case show them to be

such.   There is no mutuality in a gambling contract; no opportunity for both sides to make gains; no consideration to be paid by one and received by the other.   One must gain, and the other must lose.   This contract is not within the definition of gambling contracts.   14 Am. & Eng. Enc. Law (2d Ed.), 581, 582.

We have not before us the question of whether the State should permit corporations to be organized for such purposes, or permit foreign corporations to carry on such business within the State.   That question may arise in a direct proceeding by the State against the corporation.

The judgment is affirmed.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred.   LONG, J., did not sit.