FRED W. HORST ET AL v. NORA B. LEWIS ET AL.[*]

FILED MARCH 17, 1904. No. 12,826.

1. **Intoxicating Liquors:** BONDS: LIABILITY. Persons engaged in selling intoxicating liquors under license in this state are jointly and severally liable for all damages arising from such traffic, to the cause of which they have contributed, and such liability extends to the sureties upon their bonds.

[*] Rehearing denied. See opinion, p. 370, *post.*

2. **Action: Parties: Venue.** All such persons and sureties may be joined as defendants in a single action to recover damages and, if a part of them do not reside, or can not be found, in the county in which the action is brought, summons may be served upon them elsewhere.

3. **Bonds: Sureties.** A brewing corporation may become liable as surety upon a liquor license bond, executed by it to induce the licensee to lease a building from it and deal exclusively in its products.

Error to the district court for Madison county: James F. Boyd, Judge. *Affirmed.*

*Allen & Reed* and *Charles F. Tuttle,* for plaintiffs in error.

*S. O. Campbell, A. G. Wolfenbarger* and *Samuel Tuttle,* contra.

Ames, C.

This is a proceeding in error to reverse a judgment for the plaintiffs, in an action by and on behalf of a widow and her minor children to recover damages from retail liquor dealers and their sureties, for having caused the death of the husband and father by furnishing him with alcoholic drinks. There are three principal defendants each having a separate license and place of business, and each having given a separate bond with sureties, but all are alleged, and two are found by the jury, to have contributed on the same day toward causing the intoxication resulting in the death complained of. Two of these principals, Horst and Loerke, reside and have their places of business in the city of Madison in Madison county, and the other, Smith, resides and has his place of business in the village of Humphrey in Platte county. The action was brought in Madison county, where Horst and Loerke and their sureties were served, and a summons was issued to Platte county where Smith and his sureties were served. Due but unavailing objection was taken to the jurisdiction of the court over Smith and his bondsmen, on

the ground that the service was unauthorized and void, and each of the principals and his sureties separately objected for misjoinder of causes of action and of parties defendant.

We think that none of these objections is valid. The policy of the statute, as settled by decisions of this court extending over twenty years, is to render all licensed liquor dealers jointly and severally liable for the consequences of intoxication to which they have in any degree contributed. *Kerkow v. Bauer*, 15 Neb. 150; *Elshire v. Schuyler*, 15 Neb. 561; *Wardell v. McConnell*, 23 Neb. 152. Counsel make a vigorous assault upon these decisions, especially the last cited of them, which they desire to have overruled. We are indisposed to recommend so radical a revolution in the jurisprudence of the state, the more so in view of the fact that the authorities assailed appear to us to announce an obvious and necessary interpretation of the statute. Defendants in such cases are treated both by the statute and by the foregoing decisions as joint wrongdoes, but the statute also creates a right of contribution among them, an element unknown to the common law relative to joint tortfeasors. In this latter respect, the attitude of licensed liquor dealers toward each other and the public is analogous to that of mutual guarantors, each for all and all for each. Each has, therefore, within the meaning of section 41 of the code, an interest adverse to the plaintiff in any civil action for damages growing out of the traffic to which he is alleged to have contributed, and is a proper party to such an action. Section 60 provides that an action may be brought in any county in which "the defendant, or some one of the defendants, resides, or may be summoned," and section 65, that where an action is rightly brought in any county, a summons may be issued to and served in any other county, against any one or more of several defendants. It is quite clear from the foregoing that this action was rightly brought in Madison county; that Smith was a proper party thereto, and that he was lawfully served in Platte county.

But Smith's sureties are obligated for his entire obedience to the law, and are liable, not only for his several or separate breaches of it, but for such breaches thereof, or liabilities thereunder, as he may have committed or incurred jointly with other licensees under the liquor act. They, therefore, to the same degree as their principal, had an interest in the action adverse to the plaintiffs, were proper parties to the action, and were properly served in any county in the state to which a summons was issued.

It is admitted by the pleadings that the defendant, the Krug Brewing Company, jointly with two other sureties, executed and delivered one of the bonds in suit, but it contended that the act was, as to the company, *ultra vires,* and that the instrument is therefore not obligatory upon it. The principal in this bond is the defendant Fred W. Horst. He carried on his business in a building belonging to the company and which he leased from it, and at the time he obtained his license, and of the execution and delivery of the bond, and as a part of the same transaction, he obligated himself to purchase beer for sale in his saloon exclusively from the company. It is alleged, and was proved to the satisfaction of the jury, that, in consideration of his agreement and of the renting of the building, the company executed the bond, and loaned or advanced the money used in obtaining the license. The articles of incorporation of the company contain the following grant of power: "The general nature of the business to be transacted by the corporation is to do a general business of manufacturing and sale of lager beer, ale, porter and malt, the erection of suitable buildings for the carrying on of said business, and to buy, sell, lease, rent, exchange or otherwise handle real estate in the state of Nebraska, or elsewhere, and the execution of such deeds and leases, bonds, mortgages, notes and trust deeds as may be proper in connection with such business." It thus clearly appears, as it seems to us, that the transaction above recited, in so far as it consisted of the leasing of the building and in securing a contract for the retailing of

beer, was within the express terms of the charter, and that the execution of the bond was, under the circumstances, a necessary incident thereto. We take it that there is no better settled principle of law, in this country, than that a grant of express powers includes within it implied authority to do any and all things necessary and convenient for the carrying of them into execution. In order that the company shall obtain revenues from its buildings, "in connection with its business," it must have tenants engaged in vending its products; and, in order that a tenant shall so engage, it is indispensable that he have a local license under the statute, and he can procure such a license only by giving a bond like that in suit. The procuring of the bond is the initial and an indispensable step toward procuring a tenant for the company's property and a customer for its beer, and is, we think, clearly within its charter powers.

These matters were pleaded in the reply in response to the defense of *ultra vires* tendered by the answer and the defendant complains because they were not stricken out upon motion as being a departure. We think the motion was properly overruled. The plaintiffs were not required to anticipate the defense, and the reply is solely responsive to the answer, and contains nothing inconsistent with the petition. It is incorrectly styled by counsel as the pleading of an estoppel. It goes merely to corroborate the allegation of the petition that the company became bound in the first instance by a valid contract. Perhaps the facts could have been proved without having been pleaded, but, if so, the pleading of them was mere surplusage which has wrought the company no injury.

Complaint is made that the trial judge, in stating the issue to the jury, copied largely from the petition, and in one instance, or more, referred them to that document, saying that the allegations of certain paragraphs of it were denied. That a more concise statement of the matters in dispute could have been made is probable, but it is not made to appear that the statement is incomplete or in

any respect misleading, or that the defense was prejudiced thereby. This court has held that, under such circumstances, mere error in form will not work reversal. *Murray v. Burd,* 65 Neb. 427.

Errors are assigned for the giving and refusal of a large number of other instructions, for the most part because the rulings in that regard were in accordance with the view of the rights and obligations of the parties, which the foregoing opinion approves. The discussion would be unduly prolonged by setting them forth in full, and no useful purpose would be subserved by so doing. We have examined them carefully, and are confident that they worked the defendants, or any of them, no damage. The evidence was conflicting in some respects, but there was sufficient to maintain all the issues on behalf of the plaintiffs, except as against Smith and his sureties, in favor of whom the jury returned a verdict, and it is recommended that the judgment of the district court be affirmed.

HASTINGS and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.

The following opinion on motion for rehearing was filed May 3, 1905. *Rehearing denied:*

1. **Intoxicating Liquors**: ACTION: PARTIES. Where different retail dealers in intoxicating liquors contribute by the sale of liquor to the intoxication of an individual which causes his death, such dealers and the sureties on their bonds, which are required by the statutes, may all be joined as defendants in one action, to recover for loss of the means of support by those who have suffered injury by reason of the death of such individual.

2. **Pleadings.** Where the plea of *ultra vires* is interposed by a defendant corporation in its answer, facts not inconsistent with the allegations of the petition may be pleaded in the reply, in the nature of an estoppel or to show that the corporation was, under

the circumstances, empowered to enter into the contract, the obligation of which is sought to be avoided.

3. **Bond:** Corporation as Surety. A brewing corporation, incorporated to do a general business of manufacture and sale of intoxicating liquors, and to erect suitable buildings for the carrying on of the business, to buy, sell, lease, rent, exchange or otherwise handle real estate, and the execution of deeds, leases, bonds, mortgages, etc., as may be proper in connection with its business, may become obligated as surety on a liquor bond of a licensed dealer, required to be given under the law regulating the sale of intoxicating liquors, where it appears that such undertaking is given with a view of renting its real estate and building in which the business is conducted, and to procure the sale of its products through such licensee.

4. **Evidence.** Evidence tending to prove that the minor sons of the deceased were required to devote all their time to the support of themselves and the family, of which they were a part, and were unable to attend the public schools, *held* properly admissible, in response to evidence on the part of the defendants tending to show that no pecuniary loss had been sustained by those claiming a right to recover for loss of support by reason of the death of the husband and father.

5. ———. Other evidence as to the payment of the debts of the deceased from the proceeds of the products raised on the farm, *held* not erroneously admitted.

6. **Expert Testimony.** Expert evidence is permitted where the facts under investigation are such that the witness is supposed, from his experience, skill and study, to have peculiar knowledge upon the subject of inquiry, which jurors generally do not possess.

7. **Carlisle Table.** The Carlisle table of mortality or life expectancy is properly admissible in evidence for the consideration of the jury in determining the probable duration of the life of the deceased, the proper foundation as to age and general health being first proved.

8. **Declarations:** Res Gestæ. Declarations, to be admissible as a part of the *res gestæ*, must accompany and be so connected as to be a part of the fact or transaction in controversy, and must tend to illustrate or explain it, such fact or transaction itself also being admissible in evidence.

9. **Errors:** Review. Where there are numerous assignments of error, the reviewing court will consider and discuss such of them only as appear to be essential to a proper disposition of the cause under review, and to finally determine the matters involved in

the litigation. The fact that all assignments of error are not noticed and commented upon in the opinion, does not imply that they have not been considered and given due weight in arriving at a decision.

Holcomb, C. J.

An opinion has been filed in this case, resulting in an order affirming the judgment rendered in the trial court against the plaintiffs in error. *Horst v. Lewis, ante,* p. 365. The liability sought to be enforced against the defendants in the trial court, plaintiffs in error here, arises under the provisions of the statute regulating the sale of intoxicating liquors, popularly known as the Slocumb Liquor Law, Compiled Statutes, ch. 50 (Annotated Statutes, 7150-7184). The nature of the action and the material facts bearing on plaintiffs' right of recovery are fully stated in the former opinion. In the brief in support of the motion for a rehearing, also in the oral argument on the motion which was allowed in this case, it is earnestly insisted that not only are the questions directly passed on incorrectly decided, but that other errors relied on to work a reversal are well taken, and were entirely overlooked or ignored in the decision rendered. It is made a cause of bitter complaint that, whereas there were 166 alleged errors assigned as grounds for a reversal, but 3 of them were discussed in the opinion filed in the case. It is held in the opinion that persons engaged in selling intoxicating liquors under licenses in this state are jointly and severally liable for all damages arising from such traffic, to the cause of which they have contributed, and that such liability extends to the sureties upon the bonds the principals are required to give before engaging in the traffic; and that all such persons and their sureties may be joined as defendants in a single action to recover damages. It is also held that a brewing corporation may become liable as surety upon a liquor license bond, executed by it to induce the licensee to lease a building from it and deal exclusively in its products.

1. It is not believed that any useful purpose will be subserved, by a further discussion relating to the plaintiffs' right to join in one action the several defendants engaged in the sale of intoxicating liquors, who are alleged to have sold the deceased the liquors contributing to and producing the intoxication, which resulted in his death, and also the sureties upon the bonds of such licensed vendors of intoxicating liquors. Our statutes on the subject are peculiar and, in many respects, are dissimilar from those found in any of the other states the objects of which are the control and regulation of the liquor traffic. Our statutes have been so often construed by this court as permitting such a procedure that the question is no longer regarded by us as being an open one. It is felt that we are bound by these prior adjudications. No sufficient reasons have been advanced to justify a departure from them, and they are accordingly, as is held in the former opinion, followed.

2. The answer of the Krug Brewing Company, who is sought to be held as one of the sureties on the liquor bond of one of the principal defendants, presents the defense of *ultra vires* as to the obligation it undertook to assume, and its liability on such obligation. The reply alleges facts to the effect that the corporation was, under the circumstances, empowered to enter into the contract, and is estopped from availing itself of the plea of *ultra vires*. It is contended that the trial court erred in not striking from the reply these allegations of fact; that they in legal effect amounted to a departure from the cause of action alleged in the petition, and that such allegations, if proper and material, could only be made in stating a cause of action in the first instance. This contention is not believed to be well taken. The petition charged a liability against the brewing company, for the injury complained of, by reason of the obligation assumed when it executed the bond required by the statute as a prerequisite to the issuance of a license to the retail dealer to engage in the traffic. The defense of *ultra vires* must be affirmatively pleaded. It

would be unavailable under a general denial. *Citizens State Bank v. Pence*, 59 Neb. 579. The plea of *ultra vires* admitted the execution of the obligation and the liability arising thereunder, except for the alleged overstepping of charter powers of the corporation in entering into the contract. The defense partakes somewhat of the nature of a confession and avoidance. The execution of the contract is admitted, but the power to create a legal obligation thereunder as against the corporation is denied. The plea of *ultra vires* is not strictly defensive matter, as contended for by counsel, but is the allegation of new matter relied on as constituting a defense. The reply may, under such circumstances, consist of a denial of such new matter, and there may be alleged, in ordinary and concise language, any new matter not inconsistent with the petition. Code, sec. 109. The allegations of fact found in the reply are not inconsistent with those found in the petition. They strengthen and fortify the cause of action therein alleged. They answer the defense of new matter relied on as a complete defense to any legal liability on the part of the corporation. The averments therein found show why the plea of *ultra vires* can not be availed of, and why the contract should be enforced as executed. That this is a correct rule of pleading is recognized in *Paxton Cattle Co. v. First Nat. Bank*, 21 Neb. 621, 645, where, in speaking on the same question, it is said:

"The answer alleges that at the time and date of the execution of the note the corporation was without capacity to contract, or even legal existence. By the reply the plaintiff alleges facts which under the law estops, or at least denies, to the defendant the right to avail itself of that defense. This, I think, is one of the proper offices of a reply. It by no means abandons the cause of action as originally pleaded, but fortifies it by the new facts rendered necessary by the allegations of the answer."

3. Aside from the question of the proper rule of pleading, it is earnestly contended that the defense of *ultra vires* as it affects the brewing company is fully estab-

lished, and that the conclusion heretofore announced, to
the effect that the corporation may become liable when
the liquor bond is executed by it, as surety, to induce the
licensee to lease a building from it and to deal exclusively
in its products, is not justified by the record, and is con-
trary to the established facts relating to the question. By
virtue of the bond executed by the principal and the brew-
ing company, as surety, the former was permitted to and
did engage in the business of selling at retail intoxicating
liquors for the period of one year, the time for which a
license was granted. The bond was a condition precedent
to the issuance of the license. Those in authority and
the public relied on the validity and sufficiency of the
obligation. It was the only protection to the public
against the evils and injury growing out of the traffic,
which the statute seeks to guard against. The obligation
was knowingly and voluntarily entered into by the cor-
poration. It can not be fairly said, under the facts as
disclosed by the record, that the execution of the under-
taking was purely as an accommodation to the principal.
That the corporation entered into the transaction with
the view of furthering its own business and from con-
siderations leading to pecuniary advantage to it in the
prosecution of its business, is too obvious to admit of
serious controversy. There is no question raised as to
the authority of the agents of the corporation to enter
into the contract. The sole question is whether, under the
facts and circumstances as disclosed by the record, the
corporation had the power to legally bind itself on an ob-
ligation in writing of this character. Manifestly it should
not be relieved of the obligation thus assumed, and those
who have suffered injury by reason of the traffic held to
be remediless unless, by the application of sound legal
principles, the corporation is clearly entitled to an ac-
quittal of all legal responsibility because the act was in
excess of its charter powers. By its articles of incorpora-
tion it is incorporated "to do a general business of manu-
facturing and sale of lager beer, ale, porter and malt, the

erection of suitable buildings for the carrying on of said business, and to buy, sell, lease, rent, exchange or otherwise handle real estate in the state of Nebraska or elsewhere, and the execution of such deeds, leases, bonds, mortgages, notes and trust deeds as may be proper in connection with said business." This court has said when speaking of the powers of corporations to make binding contracts:

"Contracts of a corporation which are not contrary to the express provisions of its charter are presumed to be within its powers, and the burden is upon one denying their validity to prove the facts which render them *ultra vires*." *Gorder v. Plattsmouth Canning Co.*, 36 Neb. 548. In respect of the subject of *ultra vires* when interposed as a defense in an action against a corporation, this jurisdiction is, we think, committed to the doctrine that the acts of a corporation, when challenged as being in excess of its powers, may be divided into two classes. The first has reference to those transactions constituting a contract between a corporation and a stranger dealing with it, when the act in question is one which the corporation has no power to perform under any circumstances, and regarding which the corporation may at all times avail itself of the defense of *ultra vires*. To the other class belong those transactions which may be engaged in by the corporation for some purposes, but not for others regarding which the defense of *ultra vires* may or may not be available, according to the circumstances of the particular case in which the question is raised. *Sturdevant Bros. & Co. v. Farmers & Merchants Bank*, 69 Neb. 220. The supreme court of California in *Miners Ditch Co. v. Zellerbach*, 37 Cal. 543, 586, speaking of the second class observes:

"But in the latter case the defense may or may not be available, depending upon the question whether the party dealing with the corporation is aware of the intention to perform the act for an unauthorized purpose, or under circumstances not justifying its performance. And the test as between strangers having no knowledge of an un-

lawful purpose and the corporation, is to compare the terms of the contract with the provisions of the law from which the corporation derives its powers, and if the court can see that the act to be performed is necessarily beyond the powers of the corporation for any purpose, the contract can not be enforced, otherwise, it can."

In a New York case, the doctrine is thus stated:

"Where the want of power is apparent upon comparing the act done with the terms of the charter, the party dealing with the corporation is presumed to have knowledge of the defect, and the defense of *ultra vires* is available against him. But such a defense would not be permitted to prevail against a party who can not be presumed to have any knowledge of the want of authority to make the contract. Hence, if the question of power depends not merely upon the law under which the corporation acts, but upon the existence of certain extrinsic facts, resting peculiarly within the knowledge of the corporate officers, then the corporation would, I apprehend, be estopped from denying that which, by assuming to make the contract, it had virtually affirmed." *Bissell v. Michigan S. & N. I. R. Cos.,* 22 N. Y. 258-290.

It is clear that the acts under consideration are to be classed with those cases which hold that the contract may, under some circumstances, be valid and binding on the corporation, and regarding which the principle of estoppel may be relied upon to defeat the plea of *ultra vires.* Whether the assumption of the obligation of a surety on the bond of the person licensed to sell intoxicating liquors was under and in pursuance of an agreement with the principal to lease its real estate and building in Madison, where the liquors were to be sold, and deal exclusively in the products of the corporation, and whether these considerations were the sole inducement to the execution of the instrument are not, in our judgment, of controlling importance. Certain it is that the product of the brewing company must reach the hands of the consumer through the medium of the licensed retail vendor in such products.

It is evident that, by the execution of the liquor bond, the business of the corporation was intended to be promoted, and the objects for which it was organized advanced. The same may be said of its real estate and building occupied by the licensee. The execution of the bond resulted in a demand for the use of the building, opened up an avenue for the sale of its products, and brought in additional revenues to the corporation. It was manifestly for the purpose of furthering its business, and accomplishing the objects of its incorporation, as indicated by its articles, that it obligated itself as surety on the bond of its principal, and that these results naturally flowed from the action taken is abundantly proved by the evidence in the record. As is said in the former opinion, *ante,* p. 365:

"It thus clearly appears, as it seems to us, that the transaction above recited, in so far as it consisted of the leasing of the building and in securing a contract for the retailing of beer, was within the express terms of the charter, and that the execution of the bond was, under the circumstances, a necessary incident thereto."

4. Certain evidence was permitted to be introduced over the objections of the defendants, to the effect that the boys of the deceased had, since the death of their father, been unable to go to school, and that all their time had been required on the farm in order to support the family, and this is assigned as error. As we view the record, this evidence was admitted in response to certain testimony brought out by the defendants, whereby it was sought to establish the fact that the earnings of the family had been as great since the death of the husband and father as before, or, in other words, that no pecuniary loss had been sustained by those claiming a right to recover by reason of his death. To meet this character of evidence, it was shown that the sons were compelled to perform labor on the farm, when they should have been in school, and in this we think there was no prejudicial error. If the earnings of the father were such as to support his family, and permit his children to attend the public school, and after

his death, in order to earn this same measure of support, all of the time of the boys was required for labor on the farm, this certainly would be some competent evidence to explain the reason why the earnings had not decreased, and to establish the fact that pecuniary loss had been sustained by reason of the death of the father.

5. A similar objection is interposed to certain testimony relating to the payment of debts of the deceased out of the proceeds of the products of the farm. There was, we think, no substantial error in this. The evidence tended, on the whole, to more clearly present to the jury the manner in which the deceased had provided for his family; his ability to provide for them, and the actual loss of support suffered by his death.

6. A physician was called as a witness and permitted to testify, over objections, regarding the nature of the injury which it is claimed caused the death of the deceased, and that, in his opinion, "the wounds about the head were sufficient to produce death." It is contended the court erred in not striking out this testimony; that it involved no question of science, but concerned only such facts as come within the ordinary observation of all; that it was an invasion of the province of the jury and prejudicial to the defendant. The question is not so regarded by us. It seems manifest that the nature, extent, and seriousness of the fracture of the skull, for it was this the question related to, was one peculiarly within the knowledge of a physician and surgeon, whose skill and experience would render him especially fitted to more intelligently explain the probable result of the injury than could be done by the layman, and that it was of advantage to the jury to have such testimony before it, if any question as to the cause of the deceased's death, and how it was occasioned, was to be determined by them. The cause of the death of the deceased and the forces that led to it were proper subjects of inquiry. If death was occasioned by a fracture of the skull, after the chain of circumstances which produced the fracture were proved, testimony of an expert character, it

would seem, was properly admissible in order to prove that death resulted from the fractured skull. This is permitted, because the witness is supposed, from his experience and study, to have peculiar knowledge upon the subject of inquiry, which jurors generally have not, and is thus supposed to be more capable of drawing conclusions from facts, and to base opinions upon them, than jurors generally are presumed to be. 2 Elliott, Evidence, sec. 1031. Applying the rule adverted to to the question here being considered, we think it must follow that there was no error committed in admitting the evidence complained of.

7. There ought not to be serious controversy as to the admissibility in evidence of the Carlisle table of mortality or life expectancy. *City of Friend v. Burleigh,* 53 Neb. 674. The proper foundation was laid by evidence showing the age of the deceased and the condition of his general health. The table was an item of legitimate evidence to be considered by the jury, in determining the probable duration of the life of the deceased and the pecuniary loss sustained by his premature death. The same objection urged against this item of evidence. could be, with equal propriety, urged against the introduction in evidence of any standard work of science or art, or any portion of the same. *Sioux City & P. R. Co. v. Finlayson,* 16 Neb. 578; 1 Elliott, Evidence, sec. 417.

8. The statements of the deceased while ' on the road from Humphrey to Madison, as to where he obtained the whiskey then in his possession, which the defendants offered to prove and which were rejected, were, in our judgment, no part of the *res gestæ,* and therefore properly excluded. They were in time long removed from the transaction resulting in his death, and but distantly, if at all, related thereto. Declarations, which accompany and are a part of the fact or transaction in controversy and tend to illustrate or explain it—such transaction itself being admissible—are admissible as being so connected as to be a part of such fact or transaction. 1 Elliott, Evidence,

sec. 537. The proposed testimony was objectionable as coming within the category of hearsay evidence. The court committed no error in excluding it. Other alleged errors are considered and discussed in the former opinion and need not here be further noticed.

9. There are many assignments which can not be noted in detail. No good purpose would be accomplished by so doing. It is related that an advocate, when arguing before an eminent jurist, was admonished to consume no more time in the discussion of the point being argued as the proposition advanced was not believed to be sound. The counsel replied that he would comply with the court's wishes, but that he had a number of other points to argue equally as good as the one he was passing. It may be that there are other assignments of error as good as those we have considered. Our mature judgment, from a full examination of the record, is that they are no better, and that to consider each of them at length and in detail would extend this opinion to an unwarranted degree.

The work of this court could, if we were required to pass upon and formally discuss in the opinion every assignment of error found in each case brought here for consideration, be thoroughly blocked, and the court would entirely fail of its mission. It would become a forum for academic discussion of abstract legal propositions, rather than a court of last resort to finally determine and decide actual controversies between litigants. "The motion," to quote from another court, "assumes that various facts appearing in the record and certain authorities in the briefs have been overlooked. The only ground, apparently, for this assumption seems to be that they have not been specifically noticed or commented upon in the opinion. It would seem to be unnecessary to state, what every member of the bar must know, that to do that would impose upon the court an amount of useless labor, quite unreasonable to expect, and would swell opinions, which should only express the reasons of the court for its conclusions as concisely as possible, into essays on each subject involved in

the appeal. It does not follow that because a fact or an authority, deemed important by counsel, has not been noticed or commented upon in the opinion, it has not been considered and due weight given to it in arriving at the decision. In many cases, facts incorporated in the record and discussed at length by counsel, are considered by us wholly unimportant, and authorities from which long quotations are made inapplicable." *Dammert v. Osborn*, 141 N. Y. 564.

The judgment of affirmance heretofore entered is adhered to and the motion for a rehearing is denied.

REHEARING DENIED.