CITIZENS' SAVINGS BANK *v.* GLOBE BRASS WORKS.

1. CORPORATIONS—PROMISSORY NOTES—ACTION—DENIAL OF EXECUTION—ULTRA VIRES.

Where a corporation sued on a promissory note fails to deny its execution under oath, as provided by Cir. Ct. Rule No. 8, it cannot claim that the execution of the note was ultra vires, or that it was not specially authorized.

2. SAME—ACCOMMODATION MAKER—CORPORATE LIABILITY.

A corporation cannot deny its liability on a promissory note made by it, on the ground that it is merely an accommodation maker, where the debt which the note represents was previously secured by a chattel mortgage on the assets of a business to which the corporation succeeded, which lien was discharged on the acceptance of the note sued upon.

3. USURY—WHAT CONSTITUTES.

Where G. purchased a bank's claim against a defunct corporation at its face value at a time when no one could know how large a portion thereof would be paid in the way of dividends through a receiver, and gave his notes for the amount thereof and for money advanced to him to purchase the assets of the corporation, reassigning the claim and others as collateral security, and payments consisting of receiver's dividends and cash were made without directions from him as to how they should be applied, a renewal note for the unpaid portion of the debt, given after all the assets of the corporation had

been distributed by the receiver, was not usurious for including an amount for the claim against the corporation in excess of the amount realized from receiver's dividends.

Error to Wayne; Rohnert, J.   Submitted October 15, 1908.   (Docket No. 89.)   Decided November 30, 1908.

Assumpsit by the Citizens' Savings Bank against the Globe Brass Works, Hyman L. Goldman, and Maurice Goldberger on a promissory note.   There was judgment for plaintiff on a verdict directed by the court, and defendants bring error.   Affirmed.

*Robert M. Brownson*, for appellants.

*Barbour & Field*, for appellee.

MOORE, J.   The following statement of facts is taken, in the main, from the brief of counsel for the appellants:

On March 27, 1906, a petition was filed by the Globe Brass Company, a corporation, for its voluntary dissolution, under the provisions of chapter 300, 3 Comp. Laws. On July 26, 1906, a decree was entered dissolving the company, and appointing a statutory receiver.   Among the claims filed against this corporation was one of the Citizens' Savings Bank for $8,029.23.   On August 31, 1906, Maurice Goldberger acquired by purchase, for the sum of $20,000, from the receiver of the company, all of its property and assets of every nature, including its accounts receivable.   In order to pay the receiver the purchase price for this property, it was necessary for Mr. Goldberger to borrow a portion of this sum, and he accordingly secured a loan of $15,000 from the Citizens' Savings Bank.   The transaction with the plaintiff was as follows: He gave the Citizens' Savings Bank his note for $8,029.23, which amount represented the full amount of the claim of the bank against the receiver of the Globe Brass Company.   The bank then advanced him $15,000 cash, taking his three promissory notes for $5,000 each, payable in two, three, and six months, respectively, secured by chattel

mortgage on all of the property purchased from the receiver.  In addition he gave the bank a bond for $4,000 for the purpose of guaranteeing to the plaintiff the difference between the face of its claim against the defunct Globe Brass Company and any amounts that might be collected from the receiver of the Globe Brass Company by way of dividends on that claim.  He also assigned to the bank, as collateral security for his loan of $15,000, this same claim against the Globe Brass Company which he had purchased from the plaintiff, amounting to $8,029.23, and also a claim of the Fort Wayne Smelting & Refining Company amounting to $3,800.  This transaction between defendant Mr. Goldberger and the plaintiff was entered upon plaintiff's books by charging his account with the following items:  August 31, note $5,000, due October 31, 1906; August 31, note $5,000, due November 30, 1906; August 31, note $5,000, due February 28, 1907; August 16, note $8,029.23, due on demand.  Shortly after this Mr. Goldman purchased an interest in the property acquired by Mr. Goldberger, and on October 31, 1906, he indorsed three notes of Mr. Goldberger held by the plaintiff.  On October 31, 1906, when the first note for $5,000 came due, $2,500 was paid plaintiff in cash, and a renewal note for $2,500 given by Mr. Goldberger.  On November 30, 1906, when the second note for $5,000 came due, $1,000 was paid plaintiff in cash, and a renewal note for $4,000, due March 30, 1907, was given by Mr. Goldberger.

The plaintiff collected from the receiver of the Globe Brass Company a dividend amounting to $4,924.49 on the claim of $8,029.23, and also collected a dividend amounting to $2,552.44 on the claim of $3,800 filed by the Fort Wayne Smelting & Refining Works against the old Globe Brass Company.  Both of these amounts were credited to Mr. Goldberger's account on the plaintiff's books, together with three other items of $100.92, $210, and $25, collections made by the bank's attorneys on claims due to the Globe Brass Company at the time of the commencement of the dissolution proceedings, and which were in-

cluded in the assets purchased by Mr. Goldberger, and by
him pledged to the bank as security for his loan of $15,000.
By giving Mr. Goldberger credit for these amounts, and
charging him with interest on his loan, the books of the
plaintiff show that on December 22, 1906, Mr. Gold-
berger owed the plaintiff $12,007.04. On or about the
18th of December, 1906, the defendant corporation, the
present Globe Brass Works, was organized, and filed
articles of association with the secretary of State and in
the Wayne county clerk's office. Its authorized capital
stock is $70,000, divided into 7,000 shares of the par value
of $10 each. The purpose for which the corporation was
organized is the "manufacture of brass goods." All of
the property, of every kind and nature, purchased by Mr.
Goldberger from the receiver of the defunct Globe Brass
Company was transferred and conveyed by bill of sale to
the new corporation, the Globe Brass Works, in consider-
ation of, and payment for, full-paid and nonassessable
shares of capital stock issued to the following persons:
Maurice Goldberger, 2,000 shares; Hyman L. Goldman,
2,000 shares; John A. Matthews, 1,500 shares; William
E. Graham, 500 shares. All of the above-named persons
were elected directors of the corporation, and officers were
chosen. On December 22, 1906, under the authority and
direction of the board of directors of the Citizens' Savings
Bank, the corporate note of the newly organized Globe
Brass Works, signed by Mr. Goldberger as president,
and Mr. Goldman as treasurer, for $12,000, payable two
months after date, was substituted for the individual notes
of Maurice Goldberger, and his notes were returned to
him. The chattel mortgage executed by him was released
and discharged. When this note for $12,000 became due,
on February 25, 1907, sundry indorsements of payment
amounting to $600 had been made upon it, and a new
note for $11,400 was given by the defendant Globe Brass
Works in renewal. Upon the maturity of this $11,400
note on May 12, 1907, sundry payments, amounting to
$946.29, had been made upon it, and a new note payable

three months after date for $10,600, signed by the Globe Brass Works, by H. L. Goldman, treasurer, and Mr. Goldberger, president, was given in renewal. Plaintiff brought suit in assumpsit on all the common counts against defendant Globe Brass Works as maker, and defendants Mr. Goldman and Mr. Goldberger as indorsers, of this note, claiming a balance unpaid of $8,755.22.

It was claimed by the defendant the Globe Brass Works:

*First.* That the note sued upon is a renewal of a portion of a certain note for $12,000, dated December 22, 1906, signed by said defendant the Globe Brass Works, and payable to said plaintiff two months after the date thereof, and which said note was given to said plaintiff for the purpose of guaranteeing the payment to said plaintiff of a certain balance then due on three certain promissory notes for $5,000 each, dated August 31, 1906 (secured by a chattel mortgage), executed by said Maurice Goldberger and payable to said plaintiff in two, three, and six months, respectively, from the date thereof.

*Second.* That the said defendant the Globe Brass Works signed said note for $12,000, dated December 22, 1906, and each of the renewals thereof, including said note sued upon, as an accommodation maker merely, and upon no other consideration whatsoever.

*Third.* That the signing of said note for $12,000, dated December 22, 1906, and each of the renewals thereof by the said defendant the said Globe Brass Works was an ultra vires act upon its part, and that by reason thereof said note, and each of said renewals thereof, was and is void.

*Fourth.* That for a large portion of said note sued upon herein, for at least the sum of $3,104.74, there was an entire want of consideration paid, advanced, or given to any or either of said defendants herein.

*Fifth.* That said note sued upon is usurious, and that, in addition to the actual money originally advanced to the said Maurice Goldberger, said plaintiff now seeks

to recover a large amount, to wit, at least the sum of $3,104.74 by way of a bonus for making said loan.

The trial court directed the jury to return a verdict in the full amount of plaintiff's claim.

In addition to the above statement of facts, it should be stated that the chattel mortgage given to the bank by Mr. Goldberger was duly filed in the office of the city clerk. It secured the payment of $15,000, and covered "the entire plant, business and property formerly of the Globe Brass Company of Detroit, Mich." Said property was described in said mortgage in detail. Accompanying the declaration was a copy of the note sued upon. While the defendants pleaded the general issue, and gave notice of the defenses before mentioned, none of them denied under oath the execution of the note upon which suit was brought.

Counsel for the appellants says the question presented in this case is a question as to how far the authority to execute a note by a corporation, in payment of the debt of one of its stockholders, is sustained by the corporate powers which the law of this State has vested in corporations. He argues that what was done was ultra vires. We quote from the brief:

"It is conceded that the note of December 22, 1906, for $12,000, was given by the Globe Brass Works for the individual obligation of Maurice Goldberger. It is therefore presumptively ultra vires, and in order to support it, it would be necessary to overcome the presumption against authority by express affirmative showing. * * * Plaintiff made no attempt to 'overcome the presumption against authority' by affirmative showing of special authority to execute the note of December 22, 1906, or either of its renewals. The defendants' proof, however, showed conclusively that the execution of none of these corporate notes was specially authorized."

There are two answers to this contention: *First.* There is no denial, under oath, of the execution of the note upon which suit was brought, as required by Cir. Ct. Rule 8. See *Dewey* v. *Railway Co.*, 91 Mich. 351; *Ing-*

*lish* v. *Ayer*, 92 Mich. 370, and the cases there cited. *Second.* The record discloses something more than the taking up of the note of Maurice Goldberger. It shows that the Globe Brass Works succeeded to the business formerly owned by Mr. Goldberger, and took over the assets of that business, and that the plaintiff bank had a valid subsisting lien stated in the chattel mortgage to be for $15,000 on these assets. This mortgage was duly filed. It is true a bill of sale of this property had been made to the Globe Brass Works, but that did not operate to discharge the lien. The property covered by the lien constituted a large proportion of the assets of the new company. The chattel mortgage could be foreclosed if the debt secured thereby was not paid and the assets of the new company wiped out. It was natural that the new company should desire to make some arrangement by which its assets should be relieved of this lien, and that was what was done. The company became the debtor in the place of Mr. Goldberger, and the assets formerly owned by him, which had passed to the new company with a lien of $15,000 on them, of which the stockholders of the new company were bound to take notice when the new company was organized, passed to it free of the lien. It would be a travesty upon justice if the company could retain these assets free from this lien and at the same time repudiate the giving of the note which was the sole consideration for the cancellation of the chattel mortgage. The doctrine of ultra vires cannot be invoked for such a result. See *Carson City Sav. Bank* v. *Elevator Co.*, 90 Mich. 550; *Dewey* v. *Railway Co.*, 91 Mich. 351, and the many authorities therein cited.

It is further urged, and we again quote from the brief:

"Even if it should be held that the note of December 22, 1906, and the renewals thereof were not void because they were ultra vires notes, still the court was in error in directing a verdict for $8,755.42, because included in this amount is the sum of $3,104.74, for which there was an entire want of consideration."

This claim is based upon the fact that the claim of plaintiff against the first Globe Brass Company was $3,104.74 in excess of the dividends which were paid by that company. We are not impressed with this claim of counsel, and certainly not as to defendants the Globe Brass Works and Mr. Goldman. The record shows very conclusively that Mr. Goldberger bought this claim when no one could know how large a part thereof would be paid in the way of dividends through the receiver. He also borrowed $15,000 from the bank, making in all a debt of upwards of $23,000. He gave no directions as to how the payments made should be applied. The indebtedness of $23,000 had been reduced to a little over $12,000 when the defendant became debtor to the bank, and the bank released its chattel mortgage. No one made any claim of usury until this suit was brought. The bank had a right to sell its claim against the old company to Mr. Goldberger, and the latter had the right to buy it. We think it cannot be said that any part of the present debt is tinctured with usury.

Judgment is affirmed.

GRANT, C. J., and BLAIR, HOOKER, and MCALVAY, JJ., concurred.