## TIMM *v.* GRAND RAPIDS BREWING CO.

1. CORPORATIONS — ULTRA VIRES CONTRACTS — INTOXICATING LIQUORS—MANUFACTURER AS SURETY.

   A brewing company may further its business by giving a bond to secure sureties on a liquor dealer's bond of one of its customers, and the contract is not *ultra vires*, or outside the scope of its business. OSTRANDER, J., dissenting.

2. SAME—ESTOPPEL — ULTRA VIRES — LIQUOR BONDS — PRINCIPAL AND SURETY.

   Such corporation is estopped to defend an action upon the bond on the ground that it was beyond its powers to execute the contract.[1]

3. SAME—CONTRACTS—PUBLIC POLICY—PRINCIPAL AND SURETY.

   The giving of an indemnity bond by a brewing company to obtain sureties for a liquor dealer is not against public policy.

Certiorari to the superior court of Grand Rapids;

[1] As to estoppel of corporation to set up plea of ultra vires, see note to *Miller* v. *American Mut. Accident Ins. Co.* (Tenn.), 20 L. R. A. 765.

Stuart, J.  Submitted January 18, 1910.  (Docket No. 83.)  Decided March 19, 1910.

Assumpsit by Charles Timm, Sr., against the Grand Rapids Brewing Company upon an indemnity bond.  An order overruling a demurrer, is reviewed by defendant on writ of certiorari.  Affirmed.

*Smedley, Hall & Freeland* (*Richard L. Newnham*, of counsel), for appellant.

*William F. McKnight* and *Fred P. Geib*, for appellee.

HOOKER, J.  The defendant is a corporation engaged in the business of manufacturing and selling all kinds of malt and fermented liquors.  The declaration alleges that it made a practice of furthering its business by aiding such keepers of saloons as purchased its product in obtaining sureties upon their bonds required by law; that in April, 1906, the defendant owned a hotel including a bar with fixtures and equipment designed for the retail liquor trade, and it desired to have such a business conducted there by one Carrel, and, to induce the plaintiff to become one of the sureties upon the bond required by the State of said Carrel, promised to indemnify the plaintiff against loss thereby and in accordance with such promise executed and delivered to the plaintiff a bond of indemnity set forth in the declaration; that Carrel entered upon said business and subsequently a judgment upon the bond executed by the plaintiff was rendered against Carrel and heirs, and execution was issued thereon, and plaintiff was compelled to and did pay said judgment.  It alleges, further, the liability of defendant and its duty to reimburse plaintiff, and its refusal to do so.  The defendant demurred to plaintiff's declaration on the ground that the execution and delivery of said bond of indemnity was beyond the power of defendant, being outside of the scope of the business for which defendant was organized, and that the

promise was *ultra vires* and the bond void. Upon the argument in this court, it was also claimed that the bond was void because against public policy. The demurrer being overruled, the cause is before us on certiorari.

The purpose for which the "Brewing Co." was organized was stated in its articles to be "the manufacture and sale of malt and all kinds of malt and fermented liquors and aërated and charged waters." Under the well-settled rule the defendant had implied power to do those things necessary and helpful to the conduct of its authorized business. It could itself engage in the sale at retail of its product in as many places as it might desire, and therefore might contract with its own sureties requisite to such business, and in our opinion it might also render assistance to purchasers of its product in furtherance of a contract for such purchase. Thus it has been held that the guaranty of the performance of the covenants in a lease by a saloon keeper was a contract within the power of a brewing company. See *Aaronson* v. *Brewing Co.*, 56 N. Y. Supp. 387. The same was held of a guaranty of payment of rent by one of the brewing company's customers. *Winterfield* v. *Brewing Co.*, 96 Wis. 239 (71 N. W. 101). Also of the guaranty of payment of notes given by a saloon keeper to enable him to commence business. *Blue Island Brewing Co.* v. *Fraatz*, 123 Ill. App. 26; *Standard Brewery* v. *Kelly*, 66 Ill. App. 267; *Keeley Brewing Co.* v. *Emrick*, 64 Ill. App. 247. It has also been held that the signing of a saloon keeper's bond as surety was not an *ultra vires* act. *Horst* v. *Lewis*, 71 Neb. 365, 370 (98 N. W. 1046, 103 N. W. 460). See, also, *Kraft* v. *Brewery Co.*, 219 Ill. 205 (76 N. E. 372).

In *Best Brewing Co.* v. *Klassen*, 185 Ill. 37 (57 N. E. 20, 50 L. R. A. 765, 76 Am. St. Rep. 26), the supreme court of Illinois held that the signature of an appeal bond for a defeated defendant in a forcible entry case was an act that was *ultra vires* under articles which showed the corporation signing the bond to have been organized to manufacture and sell beer, ale, and porter and to carry

on a general brewing business in all its branches. The opinion states that there was no evidence tending to prove that the business of the corporation had been or was ever likely to be benefited in any degree by the execution of the bond. In a later case the same court held that loaning money to enable a borrower to erect a building in which he promised to sell only the beer manufactured by the corporation loaning the money was not *ultra vires*. The case is distinguished from the *Klassen Case* in the opinion. See *Kraft* v. *Brewery Co.*, 219 Ill. 205 (76 N. E. 372). The foregoing and other cases cited by counsel sufficiently indicate the application of the general rule as to implied powers to such cases as the present.

Furthermore, the great weight of authority sustains the claim of the plaintiff's counsel that the defendant is estopped from denying its liability on the ground that the act was *ultra vires*. In *Carson City Sav. Bank* v. *Elevator Co.*, 90 Mich. 550 (51 N. W. 641, 30 Am. St. Rep. 454), we said:

" The plea of *ultra vires* should not as a general rule prevail, whether interposed for or against a corporation, when it would not advance justice, but, on the contrary, would accomplish a legal wrong."

See, also, *Coit* v. *City of Grand Rapids*, 115 Mich. 493 (73 N. W. 811); *Rehberg* v. *Surety Co.*, 131 Mich. 135 (91 N. W. 132); *Citizens' Sav. Bank* v. *Globe Brass Works*, 155 Mich. 9 (118 N. W. 507).

Counsel's contention that the giving of this bond is contrary to public policy is perhaps a proper suggestion to be considered for its bearing upon the questions already discussed. We are of the opinion, however, that it is not controlling. The sale of beer was lawful, and, while restricted to persons or companies giving the statutory bonds, there is nothing to justify the inference that one may not hire or indemnify lawful bondsmen, or that the implied powers of the corporation are restricted or the rule relating to *ultra vires* acts affected thereby.

The order of the learned judge of the superior court is affirmed.

MOORE, MCALVAY, and STONE, JJ., concurred with HOOKER, J.

OSTRANDER, J.   I think the business of becoming surety upon saloon keepers' bonds *ultra vires* the powers of defendant.   I concur in the result upon the ground that defendant is estopped to urge the defense of *ultra vires.*