Argued 11 October; decided 12 November, 1900.

### SILSBY *v*. STRONG.

[62 Pac. 633; 13 (N. S.) Am. & Eng. Corp. Cas. 574.]

TRUST DEED — PAROL EVIDENCE OF CONSIDERATION.

1.   Where a trust deed directs the sale of the personalty conveyed, and a distribution of the proceeds among certain creditors, the fact that the amounts owing to such creditors do not appear in the deed does not invalidate it; such omission going only to the sufficiency of the consideration, which may be shown by parol.

CONSTRUCTION OF TRUST DEED — POWER TO SELL.

2.   Where a trust deed directs the sale of the personalty conveyed, and a distribution of the proceeds among certain creditors, but does not direct when or how the property shall be sold, the deed is nevertheless valid, since obviously the trustees have discretion to sell as the best interests of the parties demand.

CORPORATIONS — ELIGIBILITY OF DIRECTORS.

3.   In view of the statute requiring directors of corporations to be stockholders (Hill's Ann. Laws, § 3224, as amended by Laws 1893, p. 62, § 1), the election as directors of persons who are not stockholders in the corporation is simply a waste of time; such persons do not become directors at all, and the board actually consists of those stockholders who have been properly elected.

RULE AS TO QUORUM AT DIRECTORS' MEETINGS.

4.   It is a general rule of law that a majority constitutes a quorum, and this will be presumed to be true of the meetings of boards of directors unless some rule or by-law to the contrary is shown.

CORPORATIONS — RATIFICATION OF ACTS OF DIRECTORS.

5.   Where the directors of a corporation at a meeting which was in some respects irregular authorized the making of a trust deed of certain personal property for the benefit of creditors, and the trustees took possession of the property and held it for over thirteen months without any expression of dissent by the corporation or its directors, such delay was a ratification of the act of the directors in authorizing such deed: *Currie* v. *Bowman*, 25 Or. 364. and *Finnegan* v. *Pacific Vinegar Co.*, 26 Or. 152, applied.

From Josephine: HIERO K. HANNA, Judge.

Action by A. W. Silsby and George H. Binns, as trustees of the Elmer-Brown Copper Mining & Smelting Company against W. J. Strong, to recover possession of certain personal property.   The complaint sets up the due organization and incorporation of the Elmer-Brown Copper Mining & Smelting Company, and further states that on or about April 16, 1896, said company made, executed, and delivered to plaintiffs a deed to the personal property therein described, said property to be held in trust for certain named creditors of the company, with power to sell the same, or sufficient thereof to satisfy the legal claims of such creditors, and that said trust should thereupon terminate; that immediately after the delivery of said deed the plaintiffs took possession of the property, and delivered it to one George E. Payne, as their agent; that on or about the twenty-eighth of May, 1897, the defendant wrongfully and unlawfully took possession thereof, and withholds the same from plaintiffs, in Josephine County, Oregon; that due demand has been made for its return, and refused; that said trust has not been fully executed; and that plaintiffs are entitled to possession.   A general demurrer thereto having been overruled, the defendant answered, and, after denying every material allegation of the complaint, set up three separate defenses:  (1)  That R. M. Kelly and W. J. Strong are the owners of the property; (2)  that J. O. Booth is the owner; and (3)  that L. S. Ship-

ley is the owner. Plaintiffs replied, and, the trial resulting in a judgment in their favor, the defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Willis & Rice,* with an oral argument by *Messrs. Dexter Rice* and *Andrew M. Crawford.*

For respondents there was a brief over the names of *A. C. Hough* and *Robert G. Smith,* with an oral argument by *Mr. Smith.*

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion.

1.   It is first insisted that the court erred in overruling the demurrer to the complaint because it is defective, in that the trust deed upon which it is based does not show the amount due or owing to the creditors, nor does it provide when and where the property shall be sold. The objection goes to the validity of the deed, but, as the action is based upon the possession given under it, the sufficiency of the complaint may be said to depend upon such validity. The first objection is without efficacy, because it challenges the sufficiency of the consideration in support of the deed, and this may be shown by parol.

2.   As it respects the second, the deed, by obvious construction, reposes in the trustees a discretion to sell for the best interests of the parties concerned. It is plain that neither of these objections vitiates the deed, and the complaint must be held sufficient.

3.   When it came to the trial, the deed was offered, and objection was made to its admission in evidence, whereupon the plaintiffs called A. M. Brown as a witness, who testified that he was a member of the board of trustees of the Elmer-Brown Copper Mining & Smelting Company, and produced

the minutes of the first meeting of the stockholders and of
the board of directors, and also of the meeting authorizing
the execution of the deed in question.   The minutes show,
in substance, that George F. Wheeler, Andrew M. Brown,
and Robert A. Brown were the sole owners of the entire
stock subscribed, and the only persons present at such stock-
holders' meeting.   They elected themselves, N. L. Ireland,
and William T. Elmer directors, organized a directors' meet-
ing, and elected George F. Wheeler president, and A. M.
Brown secretary and treasurer.   There were present at the
meeting which authorized the execution of the deed George
F. Wheeler and A. M. Brown; the latter holding the proxy
of R. A. Brown, with authority to act in his stead.   Objec-
tion was also made to the introduction of these minutes, but,
the objections being overruled, the deed and minutes were
submitted to the jury.   It is insisted that the board meeting
which authorized the execution of the deed was illegal, be-
cause R. A. Brown was not personally present thereat, leav-
ing the board without a quorum to transact business.   The
situation is a novel one. Two of the directors elected were not
stockholders, and hence were not eligible under the statute:
Hill's Ann. Laws, § 3224, as amended in 1893 (Laws 1893,
p. 62).   Under this section, a director ceasing to be a stock-
holder ceases also to be a director; and, if a director cannot
continue after having parted with his stock, it follows that
one without stock cannot be legally elected a director, so that
the attempted election of Ireland and Elmer was without
validity.

4.   This left the board consisting of three directors only,
and, as the by-laws or other rules of the corporation prescrib-
ing the number necessary to constitute a quorum were not
introduced in evidence, we must have recourse to the gen-
eral rule of law governing such bodies, under which a ma-
jority constitutes a quorum, and a majority of those may
bind the corporation.   Now, in the case at bar only two

directors were present, while the proxy of the other indicates his consent to the meeting. Those two constituted a majority of all the legally elected and qualified directors of the corporation, and, they having concurred in the adoption of the resolution which authorized the execution of the deed, its validity cannot be questioned on the ground of want of proper authority to make it: 2 Cook, Stock, Stockh. & Corp. Law (3 ed.), 1068.

5. Exceptions have been taken to several instructions to the jury. They were charged by the court, in substance, (1) that they must find for the plaintiffs if they have been in continuous and uninterrupted possession of the property, but that, if they believe from all the evidence that the defendant has been in rightful possession, they must find for him; (2) that if the Elmer-Brown Copper Mining & Smelting Company, by and through its board of directors, made the deed offered in evidence, and if the property was delivered into the possession of the plaintiffs, and they placed Payne in possession as their agent, and he so continued in the possession until dispossessed by the constable of Kerby District, then plaintiffs are entitled to recover; (3) that although the proceedings of the board of directors, whereby they transferred the property to plaintiffs, may have been irregular, and the record does not disclose all such proceedings, yet, if they, by their silence for a long term of months, acquiesced in the transfer, then in that event such transfer was valid, and, so long as plaintiffs held possession, they were entitled to recover from the defendant, or any person claiming under him; (4) that inasmuch as Booth's judgment is subsequent to the transfer, and he had notice of the plaintiffs' possession and right to the property, he is not entitled to claim possession or title until plaintiffs' trust shall terminate; (5) that the statements of George F. Wheeler, president of the company, made as shown, were not binding upon the company. The instructions are brief, and not altogether

clear.  Others were given, but are not in the record, so we must construe these together, with reference to the theories of the respective parties upon which the case was tried and the evidence adduced.  Plaintiffs' theory is that they obtained possession under a deed from the company, and that they so continued in possession until dispossessed by the defendant through the constable of Kerby District, by virtue of a writ of restitution to restore possessoin of the mine upon which the property was situated; that, if the deed was lacking in regularity, yet the stockholders and directors had ratified it by allowing and permitting the plaintiffs to take and remain in possession of the property in question thereunder, and by treating the deed as valid and binding upon them for more than thirteen months, thus acquiescing in and confirming all that was done by the trustees in the first instance, and of this there was evidence to go to the jury.  The defendant is claiming, through the writ of restitution by means of which he, or, rather, himself and one Kelly, were put in possession.  In support of his right, he testified, in·effect, that he and R. M. Kelly formerly owned the copper mine upon which the property was situated; that they had given the Elmer-Brown Copper Mining & Smelting Company an option to purchase; that the company placed the machinery thereon, under the option, and was using it in connection therewith; that by subsequent agreement with George F. Wheeler, president of the company, the option was extended about May 1, 1896, and from time to time thereafter; that the company finally failed in its payments, and, refusing to surrender possession, an action was commenced in the justice's court, judgment obtained, and under a writ of restitution issued thereon they were put into possession, and were therefore rightfully entitled to the property.

Now, it was in view of the respective contentions and of the evidence that the instructions were given, and the first must be read in connection with the rest.  By the second the

question was submitted to the jury whether the deed was well executed, and the property delivered to the plaintiffs in pursuance of it, and by them to Payne as their agent, and whether he so continued in possession in that capacity until displaced by the constable. By the third they were charged that, if the deed was found to be irregular in its execution, yet, notwithstanding such fact, if they found that the directors had remained silent and acquiesced in the transfer for a long term of months, there was a ratification which validated it and the transfer, and that, if plaintiffs held possession thereunder; they were entitled to recover. For this latter we have the authority of *Currie* v. *Bowman,* 25 Or. 364 (44 Am. & Eng. Corp. Cas. 662, 35 Pac. 848), and *Finnegan* v. *Pacific Vinegar Co.,* 26 Or. 152 (37 Pac. 457). Thus were submitted to the jury the two phases of the controversy touching the validity of the deed and transfer of the property— First, whether the deed was regularly executed; and, second, if not, whether it and the transfer had been subsequently ratified. So, having these in mind, the court told the jury that, if the plaintiffs had been in continuous and uninterrupted possession (that is, under either of the conditions named), they were entitled to recover. Upon the other hand, the jury were instructed that, if they believed from the evidence presented that the defendant was in rightful possession, they must find for him. This must have been intended as a resume, and spoken in the light of the evidence and other explanatory instructions, as otherwise it could have no meaning at all. The fourth instruction was called forth by evidence showing that J. O. Booth obtained a judgment in a justice's court against the company, and that an execution thereon issued had been levied upon a portion of the property in question, which was sold to the execution creditor, all of which occurred subsequent to the execution of the deed and transfer of the property to plaintiffs. Having purchased with notice of the plaintiffs' right, it is but natural to con-

clude that whatever right or title Booth obtained by his alleged purchase was subordinate to that of plaintiffs. The fifth instruction was given in view of the testimony of defendant to the effect that George F. Wheeler, the president of the company, had on May 1, 1896, agreed, in considera-. tion of an extension of the option, to leave and forfeit the machinery, which is a part of the property in dispute. The term "statements," as used in the instruction, has reference to such alleged agreement, and, having been made subsequent to the deed and transfer, could not bind the plaintiffs. Having disposed of all the assignments of error concerning which there is any reasonable dispute, and such disposal being favorable to respondents, the judgment is affirmed.

AFFIRMED.