Argued December 20, 1917, modified January 22, rehearing denied
March 5, 1918.

# DEPOT REALTY SYNDICATE v. ENTERPRISE BREWING CO.*

(170 Pac. 294; 171 Pac. 223.)

**Corporations—Guaranty of Lease of Customer.**

1. A brewing corporation can legally guarantee the performance of any condition in a lease to a saloon-keeper who stipulates exclusively to sell such corporation's beer.

**Guaranty—Liability of Guarantor—Landlord and Tenant.**

2. An indorsement on a lease, "for valuable consideration we hereby guarantee the faithful performance by the above lessees of all their obligations," makes the obligation joint and several, and the landlord can sue the guarantor for rent without making effort to collect from the lessee.

**Corporations — Acts of Officers Beyond Authority — Ratification — Silence.**

3. Where an agent for a brewing corporation guarantees payment of rent by a saloon-keeper without authority, but the landlord writes the officers of the corporation as to the fact, asking if it is all right, silence on the part of the brewing company renders it liable for subsequently accruing rent, but not for prior rent, it being the duty of the principal to immediately deny the authority of the agent if it desires not to be bound.

**Corporations—Powers of Managing Officers—Contracts of Guaranty.**

4. The managing officers of a brewing corporation have the power to authorize an agent to guarantee the conditions in leases to saloon-keepers, or to ratify such a guaranty, without a resolution of the directors; such officers of a corporation having power coextensive with those of the principal, except as to matters over which the stockholders alone have control, and power to adopt any reasonable means that might tend to advance the interests of the corporation.

**Corporations — Guaranty — Authority of Agent — Sufficiency of Evidence.**

5. Evidence *held* insufficient to support a finding that a state agent for a brewing corporation had authority to guarantee payment of rent by a saloon-keeper to a landlord.

---

*On power of corporation organized for the manufacture and sale of liquor to enter into contracts of guaranty or suretyship on behalf of its customers, or prospective customers, see note in 27 L. R. A. (N. S.) 186.    REPORTER.

ON PETITION FOR REHEARING.

**Estoppel—Equitable Estoppel—Silence.**

6.  One is usually required to hastily refute oral declarations, made in his presence, affecting him injuriously, but this does not generally apply to letters, except where acted upon or invited.

> [As to silence as ratification of act of strangers, see note in Ann. Cas. 1912B, 151.]

**Principal and Agent—Unauthorized Acts of Agent—Silence of Principal—Ratification.**

7.  Where unauthorized contract of agent is brought to the knowledge of the principal, either orally or by letter, the principal must hastily disavow it or he will be held to have ratified it, and particularly so if the failure to do so might impose loss or injury upon the other party.

> [As to liability of principal for unauthorized act of agent, see notes in 22 Am. St. Rep. 189; 88 Am. St. Rep. 779.]

**Principal and Agent—"Ratification" of Contract—"Estoppel in Pais."**

8.  A clear distinction exists between ratification of contract by a principal and estoppel *in pais;* ratification following the unauthorized act, and estoppel being based on principal's inducement to another to act to his prejudice.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 2.    Statement by MR. JUSTICE MOORE.

This is an action by the Depot Realty Syndicate, an Oregon corporation, against the Enterprise Brewing Company, a California corporation doing business in this state, to recover $1,450 as arrears of rent reserved in a lease executed by the plaintiff to John Ralson, the payment of which sum is alleged to have been guaranteed by the defendant. A demurrer to the initiatory pleading on the ground that it did not state facts sufficient to constitute a cause of action having been overruled, an answer was filed denying the material averments of the complaint. The cause was tried without the intervention of a jury and when the plaintiff had introduced its evidence and rested, a motion for a judgment of nonsuit was interposed and denied. The defendant's counsel then declined to offer any evidence, whereupon findings of fact and law were made

in conformity with the averments of the complaint, and based thereon a judgment was rendered as demanded therein and the defendant appeals.    Modified.

For appellant there was a brief over the name of *Messrs. Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. Joseph Simon.*

For respondent there was a brief over the names of *Messrs. Wood, Montague & Hunt* and *Mr. Donald M. Graham,* with an oral argument by *Mr. Richard W. Montague.*

Mr. Justice Moore delivered the opinion of the court.

1. It is contended that though the defendant may have been benefited by the contract which forms the basis of this action, a corporation cannot legally guarantee the performance of any condition, and for that reason an error was committed in overruling the demurrer. It is conceded that the defendant is engaged at San Francisco, California, in manufacturing beer, which product is disposed of at wholesale to saloon-keepers the payment of whose rent has, in some instances, been guaranteed by the officers of the corporation. The general rule that an ordinary corporation cannot become a surety is subject to the well-recognized exception that such legal entity has implied power and may encourage legitimate undertakings by advancing money, extending credit, or becoming surety for any of its independent agencies, when by doing so it is reasonably expected that the business in which the corporation is engaged will be advanced by such appropriate means: 3 Thompson, Corp. (2 ed.), § 2207. Thus in *Winterfield* v. *Cream City Brewing Co.,* 96 Wis. 239 (71 N. W. 101), a headnote reads: "It is not

*ultra vires* for a corporation organized to make and sell beer to guarantee the rent of a customer." To the same effect see *Timm* v. *Grand Rapids Brewing Co.*, 160 Mich. 371 (125 N. W. 357, 27 L. R. A. (N. S.) 186); *Blue Island Brewing Co.* v. *Fraatz*, 123 Ill. App. 26; *Holm* v. *Claus Lipsius Brewing Co.*, 21 App. Div. 204 (47 N. Y. Supp. 518); *H. Koehler & Co.* v. *Reinheimer*, 26 App. Div. 1 (49 N. Y. Supp. 755); *Horst* v. *Lewis*, 71 Neb. 365 (98 N. W. 1046, 103 N. W. 460).

The securing of saloon-keepers who would stipulate exclusively to sell the defendant's beer tended to expand its competition and enhance the scope of its business, and this being so, the corporation could lawfully guarantee the payment of rent of buildings occupied by its customers while keeping the terms of such agreement. No error was committed as to the rule invoked in this particular.

2, 3. It is maintained that the alleged guaranty is not an undertaking for the payment of another's debt, but is in effect a contract for indemnity merely, which obligation is collateral and no liability attaches until an effort has been made to collect from the principal, and since the complaint contains no averments in respect to such matter, an error was committed in overruling the demurrer. A text-writer in discussing this subject remarks:

"When, by the terms of the contract, the obligation of the surety or guarantor is the same as that of the principal, then, as soon as the principal is in default, the surety or guarantor is likewise in default, and may be sued immediately and before any proceedings are had against the principal": Brandt, Suretyship Guaranty (3 ed.), § 110.

Thus in *Redfield* v. *Haight*, 27 Conn. 31, the defendant's son signed a writing as follows:

"And the said Joseph Haight hereby further agrees, in consideration of the premises, to assume, and does hereby assume, the payment of the liabilities and debts of the firm of Redfield & Haight,—that is, the liabilities of the said firm contracted for goods, wares, and merchandise for said business, and the liabilities and debts of the said Edwin Redfield, contracted and incurred for goods for the said business so conducted by him alone, a schedule of which debts and liabilities is hereto annexed."

To this contract was appended, upon the same paper, a memorandum upon which the suit was brought as follows:

"In consideration of one dollar, to me in hand paid, I hereby guarantee the full and fair performance of the covenants and agreements mentioned in the foregoing instrument on the part of Joseph Haight.

"Dated August 8, 1854.

"Desire W. Haight."

It was held that the defendant's contract was not a mere indemnity, but an absolute guaranty, and that upon the breach of the principal's agreement the obligee could immediately maintain an action against the guarantor.

In *Garey* v. *Hignutt*, 32 Md. 552, it was ruled that a creditor was not required to exhaust his remedies against a principal before resorting to the surety for payment of a debt for which both principal and surety were equally bound.

In *Geddis* v. *Hawk*, 1 Watts (Pa.), 280, it was decided that a creditor was not bound to resort to the principal for the collection of his debt, in the first instance, but that he might sue and recover from a surety.

"Where a contract of suretyship is joint and not several all the obligors must be joined as parties defendant. Where it is joint and several all or less than

all may be sued as plaintiff elects'': Brandt, Suretyship Guaranty (3 ed.), § 829.

It will be seen from an inspection of the undertaking hereinafter set forth that the person signing the writing stipulated that Ralson would faithfully perform all the conditions of the lease, thereby making the engagement of the guarantor the same as that of the principal. One of these obligations was to pay the rent reserved. The guaranty is therefore a joint and several express engagement to pay monthly in advance the sums of money specified. Thus in *Gile Grocery Co.* v. *Lachmund,* 75 Or. 122 (146 Pac. 519), a headnote reads:

''A guaranty is an absolute undertaking to pay the debt when due, and is not discharged by the failure of the creditor to exhaust his remedy against the principal debtor.''

To the same effect see, also, *Weiler* v. *Henarie,* 15 Or. 28 (13 Pac. 614); *Delsman* v. *Friedlander,* 40 Or. 33 (66 Pac. 297). No error was committed in this particular.

The remaining question to be considered is whether any evidence was received at the trial tending to show that the defendant's agent was authorized to guarantee the payment of the rent in such a manner as to bind his principal, or whether it, by any act or omission of its officers, is liable for the payment of any part of the rent. It appears from a transcript of the testimony that the defendant on January 1, 1906, entered into a contract with Henry Meister whereby the latter was appointed its agent and given the exclusive right to sell in Oregon the manufactured product of that corporation. Meister in March, 1906, with the defendant's consent sold all his interest in such agency to C. B. Williams. Alex Sweek, an attorney of Portland,

Oregon, testified as plaintiff's witness that he was present when such bargain was concluded; that U. Remensperger and P. Windeler, respectively the president and secretary of the defendant, were also there on that occasion and advised that it was not necessary to write a new contract, but that a transfer of Meister's agreement with slight modifications was sufficient; that thereupon the witness made on such writing the notations "O. K." which is identified as indicating some of the clauses of the contract that were continued in force. In referring to the writing Mr. Sweek testified:

"It was delivered to Mr. Williams as his evidence of authority and the agreement between all of us was that the contract was to be handed to Mr. Williams, and he would have all of the authority disclosed by that contract, but no greater."

The original agreement was received in evidence and has been sent up with the transcript. An examination of the writing shows that clauses thereof, numbered 1st, 2d, 4th, 5th, and 6th, have written at the left of each on the margin of the paper the letters "O. K." The remaining paragraphs of the writing are not thus marked, but words and figures have been substituted in some instances instead of others as originally employed. The third clause has two crossed lines indicating that such paragraph had been set aside so far as it related to Williams' authority. A red line is drawn through each word of the ninth clause, which was originally as follows:

"It also authorizes and empowers its said agent to expend not to exceed the sum of $350, in fitting up a saloon for a person who will sell its beer for a term of years, upon the condition that if the person so agreeing shall fail or neglect so to sell said beer to the

exclusion of all beer for the time agreed, that is keg beer, then the sum expended to become immediately due and payable.''

The paragraph formerly numbered 7th has written at the left the figures ''10,'' while the clause previously marked 10th is now numbered ''11.'' A part of that paragraph referring to the defendant and to Meister, conferring a right assigned to and intended to be exercised by Williams, reads:

''And it further authorizes him to sign agreements and leases with saloon-keepers and others buying said beer, for it and on its behalf, as its said agent and manager, hereby ratifying and confirming all that its said agent and manager for said territory may and shall lawfully do under this agreement.''

The plaintiff herein being the owner of storerooms in a building in Portland, Oregon, executed a lease thereof to Crane & Dewey at a monthly rental of $175 to November 1, 1910, $250 a month for the second year, $300 a month for the third year, and $325 a month for the fourth year to expire November 1, 1913. This lease with the plaintiff's consent was assigned August 17, 1911, to John Ralson, who was to operate a saloon on the premises and sell exclusively the beer manufactured by the defendant. There was indorsed upon the assigned lease a memorandum which reads:

''Portland, Oregon.
''For valuable consideration we hereby guarantee the faithful performance by the above lessees of all their obligations under the within lease.
''(Signed)   Enterprise Brewing Co.
''U. Remensperger, Pres.
''P. Windeler, Sec.''

The plaintiff executed to Ralson another lease of the premises for a term of two years commencing November 1, 1913, at the expiration of the original lease, at

a monthly rental of $200.    There was indorsed on this second lease the following:

"Portland, Oregon, May 27, 1913.
"For valuable consideration we hereby guarantee the faithful performance by the within lessee of all his obligation under the within lease.
"(Signed)    Enterprise Brewing Co.
"By C. B. Williams, Agt."

Ralson on January 1, 1915, was indebted to the plaintiff to the extent of $400 for the use of the premises during the two preceding months, and upon his promise to pay that sum in installments, the rent was by agreement of the landlord reduced to $125 a month from January 1, 1915, to May 1st of that year, while $150 a month was stipulated to be paid until December 31, 1915, thereby extending the term of the second lease two months.    In a letter written by the plaintiff January 11, 1915, to the defendant and C. B. Williams its agent, Portland, Oregon, the following language is found:

"In the matter of the lease to John Ralston, which you have guaranteed, we desire to confirm by this letter the agreement which was arrived at in the interview a few days since between Mr. Ralston, your Mr. Williams and the writer."    (James D. Hart, the plaintiff's secretary, setting forth the terms hereinbefore stated:) "By this reduction the opportunity to the tenant to make the payment without calling upon you is enhanced and we have made the modification with the understanding that your guaranty will hold until said December 31st, 1915, for any portion of the above total of $2100 [the amount of the rent due and to accrue] that Mr. Ralston fails to pay."

A carbon copy of this note, accompanied by a letter written at the same time by Mr. Hart for the plaintiff was mailed to and received by the defendant at San

Francisco, California, January 13, 1915, but no response thereto was ever made.

Ralson paid the rent from January 1, 1915, to June 1st of that year. It is fair to infer, however, that he vacated the premises for on July 2, 1915, the plaintiff wrote the defendant saying in part, "that Mr. Ralston's place of business is closed and that he is now in arrears in rent for #120 North Sixth Street in the amount of $675.00," a demand for the payment of which was made. A carbon copy of this notification and a letter of similar import and demand were also mailed to the defendant at San Francisco, California. No response, however, was made thereto. Replying to a letter from plaintiff's counsel relating to the payment of the rent demanded, the defendant on July 14, 1915, wrote that the matter had been referred to their attorney at Portland, Oregon, and to Mr. Williams, its agent, saying *inter alia:*

"We are somewhat in the dark regarding the entire affair, and naturally wish to have some particulars, which will take up some time owing to the distance between us."

C. B. Williams, as plaintiff's witness, in answer to the inquiry:

"What were the circumstances under which you signed the name of the Enterprise Brewing Company to the Ralson lease, Mr. Williams?" testified over objection and exceptions as follows: "Mr. Ralson was complaining continually about his rental of the premises down there being too high, and after a conference or two with Mr. Hart, and between Mr. Ralson and myself and Mr. Hart, the question came up about an additional lease; and the former rental was $325, and he agreed to reduce the rental from that time on to $200, and give us a new lease for an additional two years, and Mr. Ralson was going to close up right then if he didn't get something of that sort, some conces-

sion on the rent there, so in order to get the thing off as soon as possible, I signed the indorsement [referring to the guaranty of May 27, 1913] believing that I had authority. * *

"Q. Did you notify the Enterprise Brewing Company of your action in indorsing this lease?

"A. I think so. * *

"Q. Did you ever receive from the Enterprise Brewing Company any objection of any sort to your action in that matter?

"A. No, sir. * *

"Q. What is the fact, Mr. Williams, as to whether or not it is necessary in selling beer for breweries in this district to guarantee leases, in order to hold the trade?"

Over objection and exception, the witness answered, "Yes, sir."

"Q. Did you do that in other instances than this one?

"A. Yes, sir.

"Q. Did the Brewery execute other guarantees?

"A. Yes, sir."

On cross-examination Mr. Williams testified that having purchased Meister's agency he continued the business in the name of the Enterprise Brewing Agency, a corporation, that became the selling agent for the defendant from which he received a salary and a commission, and that the defendant's beer was sold in Oregon only to the Enterprise Beer Agency. In answer to the question, "And you were practically the Enterprise Beer Agency?" the witness replied: "Yes, sir." Williams also testified that without the defendant's express authority he executed on its behalf a promissory note for $900, to evidence the purchase price of material that was used in erecting a building on a lot which he owned in Washington County, Oregon, and upon his conveyance of such premises to the defendant, it paid off the note. This witness further

stated upon oath that without consulting the defendant he signed attachment bonds on its behalf in actions to recover from saloon-keepers sums of money due from them for the purchase of beer.

The plaintiff's counsel introduced in evidence the depositions of U. Remensperger and P. Windeler, from which sworn statements it appears that neither the defendant corporation nor its board of directors ever adopted a resolution authorizing Williams to guarantee a performance of the conditions of Ralson's lease, nor did such officers or the corporation which they represented own any stock in the Enterprise Beer Agency, and that while the deponents personally signed such leases no person was authorized to do so for them.

The foregoing is deemed to be a fair summary of all the material evidence received at the trial. It will be remembered that the clause in the contract which was assigned to Williams empowered him to sign agreements and leases with saloon-keepers and others buying the defendant's beer. This language probably could not be construed as expressly authorizing the guaranty of payment of rent of a building which was used by a saloon-keeper who exclusively sold the defendant's beer. Mr. Sweek, however, interpreted that provision of the agreement as conferring such authority and so advised Williams who, as agent, signed the guaranty indorsed upon Ralson's lease and testified that he thought he notified the defendant of his action in the matter, and that no objection thereto was made by his principal. The uncertainty of Williams' testimony in this particular renders it problematical as to whether or not the defendant ever obtained such information. But however this may be, it did receive the letter written by Mr. Hart January 11, 1915, for the plaintiff in relation to the guaranty and

made no objection thereto. A sense of fair dealing demanded of the defendant a prompt denial of Williams' asserted right to indorse Ralson's lease if the authority had not been conferred, and the corporation desired to evade the legal consequences of its agent's act. The defendant should not be permitted by its silence to speculate upon the possibility of Ralson's success in operating a saloon and his resulting ability to pay the rent reserved, but if he failed in this particular then to deny Williams' authority to indorse the lease: *Currie* v. *Bowman*, 25 Or. 364, 377 (35 Pac. 848) ; *Finnegan* v. *Pacific Vinegar Co.*, 26 Or. 152, 155 (37 Pac. 457) ; *Schreyer* v. *Turner Flouring Mills Co.*, 29 Or. 1, 16 (43 Pac. 719) ; *Silsby* v. *Strong*, 38 Or. 36, 42 (62 Pac. 633) ; *Cranston* v. *West Coast Life Ins. Co.*, 72 Or. 116, 130 (142 Pac. 762).

4. As a corporation acts by its agents, the powers of its managing officers are coextensive with those of their principal, except in relation to matters over which the stockholders alone have control: 21 Am. & Eng. Ency. Law (2 ed.), 852. The defendant's president and secretary necessarily had sufficient power to adopt any reasonable means that might tend to advance the interests of the corporation, even without a resolution of the board of directors to that effect, and hence such managing officers could authorize Williams to indorse a lease, or ratify his act in that particular: *Calvert* v. *Idaho Stage Co.*, 25 Or. 412, 414 (36 Pac. 24) ; *Moll* v. *Roth Co.*, 77 Or. 593, 601 (152 Pac. 235).

5. A careful examination of all the evidence convinces us that no testimony was received tending to show Williams was ever empowered to guarantee the payment of rent of buildings even when occupied by saloon-keepers who had agreed to sell the defendant's beer exclusively. The fact that a red line was drawn

through each word of the 9th paragraph of the Meister contract which was assigned to Williams shows that his authority was intended to be restricted. It appears from the depositions of the president and secretary of the defendant that neither of them knew, until about eight months prior to giving their testimony, and probably when they received Mr. Hart's letter of January 11, 1915, that Williams had undertaken to guarantee the payment of Ralson's rent. These sworn statements are not seriously controverted by the testimony of Williams who "thinks" only that he notified these officers of his indorsement of the lease.

We conclude, therefore, that the defendant is not responsible for any part of the rent which was due January 1, 1915, for the preceding months of November and December, but that it is liable for the rent thereafter accruing and remaining unpaid, by reason of its failure to deny Williams' authority when notified by Mr. Hart.

The judgment will be modified by remitting the sum of $400 and the cause will be remanded with directions to enter a recovery against the defendant and in favor of the plaintiff for $1,050.   MODIFIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MC-CAMANT and MR. JUSTICE BEAN concur.

---

Denied March 5, 1918.

ON PETITION FOR REHEARING.   REHEARING DENIED.

(171 Pac. 223.)

*Messrs. Dolph, Mallory, Simon & Gearin,* for the petition.

*Messrs. Wood, Montague & Hunt* and *Mr. Donald M. Graham, contra.*

Department 2.    Mr. Justice Moore delivered the opinion of the court.

In a petition for rehearing it is insisted that the defendant was under no legal obligation to reply to the plaintiff's letter of January 11, 1915, containing the information that the term of the lease had been extended two months, from November 1st of that year and the monthly rent of $200 reduced to $125 to May 1, 1915, and to $150 for the remainder of the term, which modification was made pursuant to an agreement with C. B. Williams, the agent of the defendant, with the understanding that its guaranty would continue until December 31, 1915, and that when this court concluded' the defendant's failure to answer such communication constituted an acceptance of the condition stated therein, the plaintiff was thus permitted to introduce evidence which had been manufactured for the occasion, whereby an error was committed.

6. When oral declarations are made by a party in the presence and hearing of his adversary who is under no restraint and conscious of the charge thus imputed, asserting against him an obligation which might be enforceable, or his commission of an offense, or limiting his title to property, or affecting him injuriously, it is reasonable to suppose he would promptly deny such positive declarations, if he desired to escape unfavorable inferences which might be deduced from his silence, and hence he is usually required hastily to refute such charges: 16 Cyc. 958. This rule, however, does not generally apply to written communications containing statements of facts, a failure to deny which is not construed as a tacit admission of the truth of the writing, and no unfavorable inference arises from such silence, except in cases when the party receiving the letter has invited it, or where there is reason to

believe he has acted upon the information thus received, or when there has been sent with the letter bills showing a shipment of goods, which invoices have been retained without objection, or where money has been sent upon a condition stated in the letter, and the sum has not been returned: 16 Cyc. 960. As sustaining the legal principle thus stated, see *State* v. *MacFarland,* 83 N. J. L. 474 (83 Atl. 993, Ann. Cas. 1914B, 782); *Seevers* v. *Cleveland Coal Co.,* 158 Iowa, 574 (138 N. W. 793, Ann. Cas. 1915D, 188).

7. These rules, however, have no application to the law governing the relation of agency. If a principal, when fully notified thereof, neglects promptly to disavow an act or contract of his agent in excess of his authority, such silence will usually be interpreted as an implied ratification, and particularly so, if the failure speedily to repudiate such conduct or agreement might impose upon the other party loss or injury: 31 Cyc. 1276; 2 C. J. 505; *Curtze* v. *Iron Dyke Min. Co.,* 46 Or. 601, 606 (81 Pac. 815).

"The rule," says Mr. Justice Bean in *Reid* v. *Alaska Packing Co.,* 47 Or. 215, 220 (83 Pac. 139), "is elementary that when an agent, in contracting for his principal, exceeds his authority, the principal, upon being fully informed of the facts, must, within a reasonable time, disavow or disaffirm the act of his agent, especially in cases where his silence might operate to the prejudice of innocent parties, or he will be held to have ratified and affirmed such unauthorized act, and such ratification will be equivalent to a precedent authority."

To the same effect see, also, 2 C. J. 504, § 124, and exhaustive notes on this subject.

8. Ratification by a principal of an unauthorized act of his agent has occasionally been grounded upon the doctrine of an equitable estoppel. A clear distinction,

however, exists between an estoppel *in pais* and ratification.

"The substance of ratification is confirmation of the unauthorized act or contract after it has been done or made, whereas the substance of estoppel is the principal's inducement to another to act to his prejudice. Acts and conduct amounting to an estoppel *in pais* may in some instances amount to a ratification; but on the other hand ratification may be complete without any elements of estoppel": 2 C. J. 469; 31 Cyc. 1247.

In the case at bar, it is possible the extension of the term of the lease and the reduction of the monthly rent might be regarded as creating an equitable estoppel, but however that may be, we rest our decision upon an implied ratification by the defendant of its agent's unauthorized assumption of authority, by failing, when fully notified thereof, promptly to deny his power to consummate the agreement.

We therefore adhere to the former opinion and the petition for a rehearing is denied.

REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MCCAMANT and MR. JUSTICE BEAN concur.