Argued March 26; affirmed April 8, 1930

DOSE v. CHAS. H. LILLY CO.
(286 P. 560)

*MacCormac Snow* of Portland (Jay C. Allen of Seattle, Wash., on the brief) for appellant.

*V. D. Dusenbery* of Portland (Crum, Murdoch & Dusenbery of Portland, on the brief) for respondent.

536

BROWN, J. It is stipulated by the parties hereto that this is not an action to recover the contract price for the goods covered by the contract, but that it is an action to recover damages for the refusal of the defendant to accept and pay for the goods.

The plaintiff asserts, in effect, that there was an overproduction of onion sets in 1926, hence the market broke, and the defendant sought the cancelation of his contract. On the other hand, the defendant says:

"Lilly (defendant) did not contract these onion sets for its normal trade with retailers, but, rather, to fulfill a commitment with the Peacock firm of Chicago. They had the two cars of Dose onion sets sold at a profit to Peacock, but had difficulty with him about terms. Therefore, in December, 1926, Lilly wanted to cancel with Peacock and sought Dose's cancellation. They thought they had it, and, sometime after December 23, 1926, cancelled out with Peacock. Defendant thus changed its position on the basis of the letter of December 23, to its detriment."

During the negotiations for sale and purchase, as well as for cancelation, one Frank Leckenby, of Seattle, was the general manager of the defendant corporation, and C. A. Plett, who executed the contract on behalf of defendant, was the acting manager of the Portland branch of the corporation.

The defendant contends that the cancelation of the contract by plaintiff is evidenced by that certain letter written by defendant to the plaintiff on December 23, 1926, which reads:

"Seattle, Washington,
"Fred Dose,                    "December 23, 1926.
    "125 Union Street,
    "Portland, Oregon.
"Dear Sir:
    "We are glad to learn from Mr. Plett that you are going to cancel sale to us of onion sets, your sale dated July 27th, and also car of sets, your sale dated July 28th.
    "We appreciate your courtesy in doing this, and as our change in arrangements makes it impossible to use these sets, we appreciate having your cancellation.
                    "Yours very truly,
                        "Lilly's—Seattle.
                        "Frank Leckenby,
"Frank Leckenby:VEZ        General Manager."

Upon receipt of this letter, the plaintiff immediately took the matter of cancelation up with Plett as the agent of defendant, and refused to cancel the contract.

■ The defendant asserts that the court committed reversible error in charging the jury as follows:

"It is admitted in this case that C. A. Plett was authorized by the defendant to negotiate with the plaintiff for the purpose of endeavoring to procure a release or cancellation of the contract described in the complaint, and I therefore instruct you that any notice or knowledge relative to said transaction which was received by the agent would be in law equivalent to notice to or knowledge by the defendant."

The foregoing instruction is supported by the facts, and, in view thereof, is a correct statement of the law: *Rayburn v. Davisson*, 22 Or. 242 (29 P. 738); *Dillard v. Olalla Mining Co.*, 52 Or. 126 (94 P. 966, 96 P. 678); *Thimsen v. Reigard*, 95 Or. 45 (186 P. 559).

Frank Leckenby, general manager of the corporation, testified:

"Q. Did you authorize Mr. Plett to make arrangements with Dose about this contract? A. Yes, surely. I asked Mr. Plett to see Mr. Dose and ask him if he could cancel it."

Now, turning to the pleadings, it will appear from paragraph 2 of defendant's second affirmative answer and defense, that shortly before December 23, 1926,. "the defendant, acting through one of its agents and representatives, had certain negotiations" with plaintiff relating to the contract, whereby the defendant "understood, assumed and believed" that the contract would be annulled by mutual consent; and the record abundantly shows that C. A. Plett was that agent.

■ Defendant asserts that, under the facts, the plaintiff is conclusively estopped to deny that the contract had been canceled, and that the trial court should have directed a verdict for the defendant on that ground. The letter hereinbefore set out, which is a self-serving declaration, does not indicate that the defendant understood that the contract had been canceled. It says:

"We are glad to learn from Mr. Plett that you are going to cancel sale to us of onion sets."

Obviously, the writer refers to some act to be performed in the future. The letter cannot be regarded as evidence against the plaintiff. It clearly falls within the scope of the general rule as stated by the editors of R. C. L., which is as follows:

"The general rule that a party cannot make evidence for himself by his written communications addressed to the other party, as to the character of dealings between them, or the liability of the party to whom they are addressed, in the absence of any reply assenting to the same, is well settled.

\* \* \* \* \*

"Nor will a party be permitted to read in evidence an unanswered letter from himself to the adverse party, for the purpose of proving the truth of facts stated in it." 10 R. C. L., § 352, Evidence.

A very interesting case dealing with the subject of competency of evidence in the nature of an unanswered letter in *Leach & Co. v. Peirson,* 275 U. S. 120 (72 L. Ed. 194, 48 S. Ct. 57, 55 A. L. R. 457), the opinion being rendered by Mr. Justice Holmes. In that case the learned jurist said:

"A man cannot make evidence for himself by writing a letter containing the statements that he wishes to prove. He does not make the letter evidence by sending it to the party against whom he wishes to prove the facts. He no more can impose a duty to answer a charge than he can impose a duty to pay by sending goods. Therefore, a failure to answer such adverse assertions, in the absence of further circumstances making an answer requisite or natural, has no effect as an admission (numerous citations)."

In that case, as here, there were no circumstances in the case to take it out of the general rule: *Depot Realty Syndicate v. Enterprise Brewing Co.,* 87 Or. 560 (170 P. 294, 171 P. 223, L. R. A. 1918C, 1001, 22 C. J., 326). For a further statement with respect to the general rule and exceptions thereto, see *Syndicate v. Enterprise Brewing Co.,* supra.

■ We now reach the issue as to the date on which the contract was breached. Concerning the defendant's attempt to renounce the contract, it is settled law that such renunciation may be rejected by the other party thereto. From 13 C. J., § 729 (d), we quote:

"If the promisee elects not to accept the renunciation and continues to insist on the performance of the promise, as he may do, the contract remains in existence for the benefit and at the risk of both parties,

and if anything occurs to discharge it from other causes, the promisor may take advantage of such discharge.''

Section 730 (e) reads:

''The renouncing party cannot force the other, nor is the other bound, to sue for a breach of the contract before the day fixed for performance arrives, and have the damages assessed as of the time of the renunciation. The party keeping the contract, in other words, need not mitigate the damages by treating as final the premature repudiation.''

In respect to the court's instructions with reference to damages, the charge to the jury is in harmony with section 8225, Or. L., relating to actions for damages for non-acceptance of goods. Likewise, the instruction complied in every particular with section 8221, Or. L., involving the right of resale of perishable goods. See, also, *Call v. Linn,* 112 Or. 1 (228 P. 127).

This cause was fairly submitted to the jury. We have examined the alleged errors with care, and can find no reason for a reversal. We therefore direct its affirmance.

Coshow, C. J., and Bean and Belt, JJ., concur.